# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS

FIRST DISTRICT—OCTOBER TERM, 1897.

## John F. Neagle v. M. E. Herbert.

1. PLEADING—*When Indebitatus Assumpsit will Lie for Money Due Under a Contract.*—Where a contract has been fully executed on the part of the plaintiff and nothing remains to be done under it but the payment of money, which payment it is the duty of the defendant to make, the plaintiff need not declare specially, but may recover in *indebitatus* assumpsit and the contract may be admitted in evidence for the purpose of showing its terms, and to measure the damages.

2. BUILDING CONTRACTS—*Recovery Without Architect's Certificate.*—In a suit on a building contract providing for an architect's certificate as a condition precedent to payment of amounts due thereunder, the evidence showed that the plaintiff was entitled to a certificate, that he applied for one, that it was refused without just cause, and that had the architect acted on his own judgment he would have issued the certificate. *Held,* that the plaintiff being entitled to a certificate and having done all within his power to procure it, had the right to sue for and recover such amount as was due him.

3. ACCOUNT STATED—*Evidence of Held Sufficient to Support a Verdict.*— The court reviews the evidence in regard to an account stated between the parties and holds that it was sufficient to go to the jury in support of the count on an account stated.

4. SAME—*An Instruction in Regard to Sustained.*—In a suit on an account stated the following instruction was given: "The jury are instructed as a matter of law, that if you believe from a consideration of all the evidence that the defendant arrived at a settlement with the plaintiff, as to the balance due him, then he is bound by that settlement, and is liable for the balance, if any so found, unless it shall appear that the settlement was made through fraud of the plaintiff, or the mistake of both parties" and approved.

**Assumpsit,** on the common counts. Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed January 6, 1898.

FRANK P. REYNOLDS, attorney for plaintiff in error.

FRANCIS T. MURPHY, attorney for defendant in error.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit by defendant in error against plaintiff in error for work done and material furnished in pursuance of a contract between the parties, and for extra work. Defendant in error recovered judgment for the sum of $2,745.26, to reverse which the present suit was brought. The declaration contains only the common counts. John F. Neagle, plaintiff in error, pleaded the general issue.

Under date of May 9, 1892, M. E. Herbert, the defendant in error, entered into a written contract with the firm of F. C. Neagle & Company, general contractors, of which firm the plaintiff in error, John F. Neagle, is the surviving partner. By this contract defendant in error agreed, "on or before the building is ready for lathing, to finish the roughing and construct and finish the steam heating thirty days after plastering done of the new building situated on southwest corner of Thirtieth street and Michigan avenue, Chicago, for the Potomac Apartment Company, according to the drawings and specifications made by Jul. De Horvath, architect, * * * in a good, workmanlike and substantial manner, under the direction of said architect, and to his satisfaction, to be testified to by a certificate under his hand; and to * * * furnish such good, proper and sufficient materials, workmanship and labor * * * as shall be proper and

Neagle v. Herbert.

sufficient for the completion and finishing all the here-inbefore designated steam heating work of said building mentioned in said drawings and specifications," etc.

The consideration to be paid Mr. Herbert is specified to be $9,385, payable in monthly payments, as the work progressed, on presentation of certificates signed by the architect, fifteen per cent of each estimate being retained until completion of the contract.

The first clause, among other things, provides that "should any dispute arise respecting the true construction and meaning of said drawings and specifications, the same shall be decided by said architect, and his decision shall be final."

The fourth clause of the contract provides that should defendant in error neglect or be unable to supply a sufficiency of material or workmen to complete the work on time; or to provide necessary materials and labor as required, and with reasonable rapidity, or show gross carelessness or incompetency, Neagle & Company, after notice in writing to defendant in error, should have power to provide materials and workmen, the cost of same to be deducted from the contract price.

The seventh clause provides that if the said work be delayed by frost or inclement weather, or causes not under the control of defendant in error, causing delay to defendant in error, or in case of alterations or additions requiring additional time, or in case he be delayed by other contractors on the building, on written notice a fair allowance, to be determined by the architect, shall be added to the time stipulated for the completion of the work, and on default in such completion, defendant in error to pay Neagle & Company ———— dollars per day for every day during which such default should exist, provided the architect should, in writing, certify that the work could have been reasonably

completed within the time stipulated, and the addition thereto.

The Potomac building, referred to in the contract, is an eight story building, containing about three hundred and twenty rooms, and has a frontage of about one hundred and twenty-five feet.

Attorney for plaintiff in error, in his argument, makes the following objections:

1. That the court erred in admitting the written contract in evidence, the declaration containing only the common counts.

2. That defendant in error was not entitled to recover in the absence of a certificate from the architect.

3. That a former judgment in favor of defendant in error was a bar to this action.

4. That the evidence of an account stated was insufficent.

5. That the first and second instructions, given at request of defendant in error, are erroneous.

Of these in their order. It is not claimed by the attorney for plaintiff in error that defendant in error did not perform the work and furnish the material which, by his contract, he agreed to perform and furnish, nor that he did not do the extra work for which he claims compensation.

"Where a contract has been fully executed on the part of the plaintiff, and nothing remains to be done under it but the payment of money, which payment it is the duty, under the contract, of the defendant to make, the plaintiff need not declare specially, and may recover in *indebitatus* assumpsit." Lane et al. v. Adams, 19 Ill. 167, citing 2 Phillips, Ev., Ch. 9, p. 108.

In Childs v. Fischer, 52 Ib. 205, 209, the court, alluding to the rule announced in Lane v. Adams, *supra*, say: "This rule has been frequently recognized by this court, and is regarded as settled law."

It seems strange that a rule so frequently recognized in practice, and with which members of the bar are so familiar, should be questioned.    The contract was properly admitted in evidence "for the purpose of showing its terms, and to measure the damages."    Adlard v. Muldoon, 45 Ill. 193.

Jul. De Horvath, who was the supervising architect of the Potomac building, the building in question, testified that, under the contract between Neagle and the Potomac Apartment Company, the work of Herbert, defendant in error, was required to be accepted by the supervising engineer, W. C. Gillespie, who had been appointed by the witness with the consent of the Potomac company; that he, the witness, told Herbert this, and that, May 24, 1893, the witness told Gillespie, the engineer, to examine and report on the condition of the heating plant, pointing out any defects and omissions, with reference to the contract; that Gillespie examined the plant and reported accordingly; that the witness, after receiving the report, made an appointment with all the parties interested to meet at his office, which they did, there being present there Mr. Moore and Mr. Gretzel, the former the president and the latter the secretary of the Potomac company, Mr. Maher, Herbert's attorney, Mr. Herbert and John F. Neagle; that at the meeting so held, the report of engineer Gillespie was taken up, section by section, and that all present, including plaintiff in error, agreed upon what was to be done; that Herbert then agreed to do what had been agreed on, and that, June 22, 1893, witness received a report from Gillespie, stating that the work had been done as agreed.

The witness further testified that when he, witness, received the report of Gillespie, the supervising engineer, he thought that Mr. Herbert was entitled to a settlement.    Gillespie testified that at the first meet-

ing above mentioned, when the parties present, including the parties to this suit, agreed on what remained to be done, it was agreed that when the deviations pointed out were taken care of and complied with according to the specifications, the plant would be accepted and paid for. This witness also recommended in his report of June 22, 1893, that defendant in error should be settled with.

De Horvath, the architect, testified that prior to the examination by Gillespie, Herbert applied to him for a certificate, when he told him that the plant had to be first approved by the supervising engineer.

Such being the status, June 15, 1897, defendant in error applied to the architect for a final certificate, when the architect gave him a letter to plaintiff in error, asking the latter to meet him in his office to settle the matter up, and that about the latter part of June, 1893, plaintiff in error came to witness' office and presented a counterclaim against Herbert for delay, etc., and claimed that Herbert was not entitled to anything. The architect further testified that at the meeting at which it was agreed as to what remained to be done under the contract, there was no mention of a counterclaim against Herbert.

It is plain from the evidence that notwithstanding it was the opinion of the architect that defendant in error was entitled to a certificate after the supervising engineer, Gillespie, reported that the work had all been done as agreed on, that he declined to issue the certificate solely on the ground that plaintiff in error brought forward a counterclaim for delay, and expenditure incurred thereby, and directed him not to issue a certificate. Of damages occasioned as claimed, there was no competent evidence, nor is it claimed, in the argument of counsel for defendant in error, that

there was.   With regard to delays, De Horvath, the architect, testifies as follows:

Q.   "Did you tell me this morning that all the contractors delayed this building?"

A.   "Yes, the whole building was delayed by the different contractors."

Court:   "That was a very common thing about that time, was it?"

A.   "Yes, sir."

Q.   "All over the city?"

A.   "Yes, sir.   It was just before the World's Fair and they couldn't get material, they couldn't get labor, and so on, all the buildings were delayed, there was not one building in the city which could be finished in time."

Q.   "Mr. Neagle delayed his portion, didn't he?"

A.   "Yes, sir; he couldn't go any further if the other parties delayed.   He was just as much delayed by other parties."

Defendant in error was a sub-contractor under Neagle, the principal contractor, and as it was necessary that the construction of the building should have advanced to a certain point before he could proceed with his work, he was not at fault, if delayed, as the architect says he was, by other contractors, or for want of material or labor which, in the then condition of the market, could not be supplied.

Defendant in error testified that Neagle told the architect not to give him a certificate.   The evidence shows that appellee was entitled to a certificate, that he applied for one, and that it was refused without just cause.   Had the architect acted on his own judgment, as he ought to have done, sustained as his judgment was by the report of the supervising engineer, that the work had been completed in accordance with the agreement at the meeting which Neagle himself attended,

he would have issued the certificate. Defendant in error being entitled to a certificate, and having done all within his power to procure it, had the right to sue for and recover such amount as was due him. Fowler et al. v. Deakman, 84 Ill. 130.

The claim of defendant in error was partly for a balance of the contract price, and partly for extra work which the evidence shows the architect ordered, and plaintiff in error claimed, in his testimony, that the Potomac Apartment Company was liable for certain of the extra work done on the heating plant.

De Horvath, the architect, was a witness for plaintiff in error, and testified that by the contract between Neagle and the Potomac company, the heating plant was required to be accepted by the supervising engineer. Neagle acted in accordance with this requirement, by attending and taking part in the meeting at which the report of the supervising engineer was discussed, and agreeing to his suggestions, and that the work should be completed in accordance therewith. He had contracted with the Potomac company, that, in consideration of the contract price to be paid to him, Neagle, by the company, the part of the work in question should be done in a manner acceptable to the engineer, and he then sub-let that part of the work to Herbert for a price to be paid by him to Herbert. How manifestly absurd, then, the claim that the Potomac company, and not he, is liable to Herbert for work necessary to be done in order that the plant should be acceptable to the engineer. It simply amounts to a claim that the company should pay both him and Herbert for the same work. It is apparent from the testimony of Neagle, that, certificate or no certificate, he did not intend, if he could by any means avoid it, to pay defendant in error the balance due him.

Alluding to the meeting at which the parties met to

consider the report of the supervising engineer, the following occurred in the examination of Neagle:

Q. "Go on and state what was said to him in regard to unfinished work, or to anybody."

A. "Well, the whole subject of that meeting was that Mr. Herbert was to do all this work."

Q. "Did he do it?"

A. "No, sir; I know he did not."

Q. "You may state whether or not you told him at any time that you would pay him any sum of money on condition that he did that work?"

A. "No, sir."

Court: "Did you answer that question?"

A. "Yes, sir; I answered it."

Q. "You say you did not agree to pay him any sum of money?"

A. "No, sir."

Court: "What was his object in going ahead to do the work there then?"

A. "When he completed the work I supposed he would get the architect's certificate."

Q. "What do you mean by the architect's certificate, that you would pay for it?"

A. "No, sir; I never agreed to pay for anything."

Court: "You never had intended to pay for it if he went on and did the work according to that plan; you didn't propose to pay for it then?"

A. "He did not ask me to pay for it."

Q. "What was the object of his going ahead to do this work, if he was not going to get paid for it?"

A. "He had a contract with me."

Court: "Well, what was the object of going ahead with the contract then?"

A. "He had drawn all the money on the contract."

COURT: "You expected him to go on with this extra work and not get any extra pay for it then, did you?"·

A. "His contract provided that he should be paid 85 per cent of the contract."

Afterward, in his cross-examination, the following questions were asked and answers given in reference to what occurred at the same meeting:

Q. "What did you say about paying the bill, if anything? You did not say a word about paying it?"

A. "No, sir."

Q. "Did he ask you if you would pay it? Did Mr. Herbert ask you, if he went on with the work, whether he would be paid for it; did you tell him yes or no?"

A. "I didn't say anything; I told him I would not commit myself."

The witness here testifies that Herbert had drawn all the money under the contract, when his own checks introduced in evidence showed that defendant in error had only drawn about $7,500, the contract price being $9,385. The statement that he told Herbert at the meeting in question that he would not commit himself, is significant. It is an implied admission that at the meeting conversation occurred in reference to payment for the work, and Herbert and Gillespie both testify that it was agreed at the meeting that when the work suggested should be done, the plant would be accepted and paid for, and Herbert testified that Neagle so said. Neagle's own testimony was sufficient to discredit his defense with the court and jury.

The next objection in order is that there was no legal evidence of an account stated. The evidence is that defendant in error presented his bill to Neagle and that the latter objected to an item in it of $315; that, subsequently, he again presented it, having deducted from it the item previously objected to, and that Neagle

said that he could not pay it until he settled with Moore Brothers, meaning, as would seem from the evidence, the Potomac company, a Mr. Moore being the president of that company. It does not appear that any objection was made by Neagle to the bill when corrected by the deduction of the $315 item.

In Claire v. Claire, 10 Neb. 54, 56, the court say: "An account stated is an agreement between the parties to an account that all the items thereof are correct."

In Stebbins et al. v. Niles, 25 Miss. 267, the court say: "The simple rendering of an account between the parties and agreeing upon the amount due, are sufficient facts on which to maintain an action," citing, among other cases, Knowles v. Michel et al., 13 East. 249. Held, also, that an express, unconditional promise to pay was not essential to a recovery. Ib. 57.

In Knowles v. Michel, 13 East. 249, the action was assumpsit for trees sold by the plaintiff to the defendants, who, on being served with process, admitted that they jointly purchased the trees for nine guineas. Held sufficient to sustain a recovery on the count for account stated.

In Cochrane v. Allen, 58 N. H. 250, held, "In an action on an account stated, proof of an express promise is not necessary. The mutual agreement, the assent of the parties to the account as a final settlement of the items stated in it, and the promise of the defendant to pay the plaintiff the balance appearing by the account to be due from him to the plaintiff, may be inferred from circumstantial evidence," citing a number of cases.

In 2 Greenlf. on Ev., Sec. 126, the author says: "If one item only is objected to, it is an admission of the rest."

We are of opinion that the evidence was sufficient to go to the jury in support of the count on an account

stated.   That it was competent, as tending to prove
an admission of Neagle of the correctness of the
account, is clear.   McCord v. Manson, 17 Ill. App.
118, 121; Mackin v. O'Brien, 33 Ib. 474.

The balance shown by the corrected bill or account
presented to Neagle was $2,951.26.   It appeared from
the evidence that there was a mistake in the corrected
account of $500 in favor of defendant in error,
being an uncredited payment of that amount by Neagle
to him in September, 1892.   This mistake was not
denied by defendant in error, but the jury, by mistake,
included it in their verdict.   The verdict was for
$3,393.95, and defendant in error remitted there-
from $648.69, and judgment was entered for the
remainder.   It is not assigned as error, nor is it
claimed by the attorney of plaintiff in error, that the
damages awarded are excessive.

It is next objected that a judgment rendered in
another suit was a bar to the action of defendant in
error, on the alleged ground that the former suit was
for part of the work done under the contract in ques-
tion.   There is no evidence to support this contention.
Plaintiff in error introduced in evidence the record of
a suit and judgment in the Superior Court of Cook
County, in a cause entitled Michael E. Herbert, for the
use of the American Radiator Company v. Francis C.
Naegle and John F. Neagle, but there is nothing in
that record tending in the least to show that the suit
involved in any way the contract between Neagle and
Herbert, or anything pertaining thereto.

We do not agree with the contention of attorney for
plaintiff in error that the first instruction "assumes
that the account was admitted to be correct."   It
merely states a general legal proposition, and the
question whether or not the account was correct, is

expressly left to the jury by other instructions. The second instruction is as follows:

"The jury are instructed, as a matter of law, that if you believe from a consideration of all the evidence that the defendant arrived at a settlement with the plaintiff, as to the balance due him, then he is bound by that settlement and is liable to him for the balance, if any, so found, unless it shall appear that the settlement was made through fraud of the plaintiff, or the mistake of both parties."

The objections made to this instruction are, first, that it refers to the fraud of the plaintiff alone, and, secondly, that it restricts the inquiry to the mistake of *both* parties, while legally the mistake of either party is sufficient to impeach the account. The first objection seems rather singular. Plaintiff in error certainly can not complain because the court did not direct the jury to enquire whether he was guilty of fraud in respect to the account. As to the second objection; upon the hypothesis that there was a mistake, and that both parties are honest, the mistake must have been mutual. On the other hand, if there was a mistake, and plaintiff in error was honest, a hypothesis to which he probably will not object, then the jury are directed to inquire whether the defendant in error acted fraudulently. By the instruction, if plaintiff in error honestly made a mistake, and if defendant in error also honestly made a mistake, in reference to the account, the settlement, if any, was not binding; or, if the former honestly made a mistake and the latter was guilty of fraud, in reference to the account, the settlement, if any, was not binding. We consider the objections of counsel for plaintiff in error to the instruction untenable. Counsel for plaintiff in error make no objection to the giving or refusal of any other instruction.

The judgment is affirmed.