(32 Misc. Rep. 166.)

### McCONOLOGUE et al. v. LARKINS et al.

(Supreme Court, Special Term, New York County.   July, 1900.)

1. SUBCONTRACTOR'S LIEN—WAIVER.
    Where a complaint to enforce a mechanic's lien does not admit the liens
    of subcontractors who have been made defendants, and such subcontract-
    ors do not answer, they will be deemed to have waived their liens, under
    Code Civ. Proc. § 3402, subd. 3, providing that in a proceeding to enforce
    a mechanic's lien every defendant who is a lienor shall, by answer, set
    forth his lien, or he will be deemed to have waived the same, unless the
    lien is admitted in the complaint, and not contested by another defendant.

2. SAME—PRIORITIES.
    The lien law of 1885, providing that "the court in the judgment shall
    direct the amount due subcontractors to be paid out of the proceeds of
    sales before any part. of such proceeds are paid to the contractors," has
    not been abrogated by the present law, and hence subcontractor's liens
    have priority over the contractor's liens.

3. CONTRACTS—PAYMENTS—ARCHITECT'S CERTIFICATE.
    Though a building contract provides that all payments "shall be made
    on written certificates of the architect to the effect that such payments
    have become due," an unjust refusal of the architect to give a certificate
    does not defeat the contractor's right to payment.

4. SUBCONTRACTORS' LIENS—INTEREST.
    Subcontractors are entitled to interest from the date of the filing of their
    liens.

Action by Charles V. McConologue and others against Mary Eliza-
beth Larkins and others to enforce a mechanic's lien.   Judgment for
plaintiffs and other lienholders.

D. J. M. O'Callaghan, for plaintiffs.

Clemens J. Kracht (George W. Carr, of counsel), for defendants
Larkins and Fagen.

Eugene Sweeney, for defendants Kelly & Dwyer.

John J. O'Brien, for defendant Nolan.

LAWRENCE, J.   In this case, after re-examining the mass of con-
tradictory testimony which was given upon the trial, I have reached
the following conclusions:

1. That the plaintiffs were not improperly obstructed or delayed by
the defendant Fagen or his architect in the execution of the work
agreed to be performed under the contract of October 13, 1898.

2. That the plaintiffs were not prevented by the alleged assault or as-
saults upon the plaintiff Charles V. McConologue from going on with
or prosecuting the work under the contract aforesaid; that it is
doubtful, upon the evidence, whether there was more than one collision
between the architect Horenburger and said Charles V. McConologue,
and that as to the one assault proven by the evidence it appears that
the said Horenburger committed the same when asked to give a cer-
tificate that the first payment had become due, when in point of fact it

was not due; and that thereupon the plaintiff offered said architect money to give such certificate, which the latter, deeming it to be an insult, resented by taking the plaintiff by the collar, and shoving him out of the door of the building. Of course, even the alleged insult did not justify the architect in committing an assault, but I am unwilling to hold that under the circumstances it can be held to have delayed or obstructed the plaintiffs in the performance of the work. The plaintiffs were not put in such peril as to justify them in abandoning the work and claiming to recover for the work done upon a quantum meruit.

3. The evidence in the case is extremely conflicting as to the manner in which the work done by the plaintiffs upon the building was performed, as to the speed with which it was prosecuted, and also as to the circumstances under which it was finally abandoned by the plaintiffs. It is, however, I think, shown by the preponderance of the testimony that the plaintiffs could not have completed their work within the few working days which remained to them of the 42 allowed to them by the contract. I am also satisfied that the plaintiffs had not made, at the time the work was abandoned, arrangements for the supply of a sufficiency of material or of workmen to enable them to perform the work within the time contemplated by the contract, and that it is established that when the plaintiff Charles V. McConologue left the place of business of the firm of Murray & Hill, after the negotiations with that firm to supply the trim had fallen through, he said, in substance, that he would have nothing more to do with the job. That thereupon Horenburger told him that that was not the business way of terminating the contract, and that he would give him notice. I think that it is also established as a fact that the giving of the notice was justified under article 5 of the contract between the parties, and that the notice was received as early at November 30, 1898, and, as the men were not ordered off of the work until the afternoon of December 5th, that the defendant Fagen was within his legal right in then assuming the control of the work for the purpose of completing it.

4. The evidence shows that, while the plaintiffs had not done work sufficient, under the contract, to entitle them to their first payment, there was a considerable amount of work and materials which they had performed and furnished. The plaintiffs, in their testimony, state that the value of such work and materials was $2,216.01, which, in view of the fact that the whole contract price was only $2,366, and of the evidence as to the condition of the work when the plaintiffs ceased working, is hardly credible. Liens have been filed to the extent of $1,327.66, and the defendant Fagen claims that he was put to an expense of $1,592.69 in finishing the work.

5. The defendants who filed liens and who did not answer are not entitled to relief in this case, but must be deemed to have waived their liens, as their liens are not admitted in the complaint. Code Civ. Proc. § 3402, subd. 3. It follows, therefore, that all of the liens except those of James Nolan, and Kelly & Dwyer, and Low & Flogaus have been waived.

6. For the same reason the motion made at the trial to consolidate the actions brought by Kanzler & Nelson must be denied, and also be-

cause such actions were not commenced until after the trial of this case was begun.

7. The defendants Nolan, Kelly & Dwyer and Low & Flogaus have duly proven the furnishing of materials and the performance of labor by them, and the value of such work and materials, but the plaintiffs claim that, after paying Nolan's lien, which is first in point of time, the plaintiffs are to be regarded as next in the order of priority, for the reason that as subcontractors the other defendants have no priority under the lien law over the contractor's lien. It is contended by the plaintiffs that section 20 of chapter 342 of the lien law of 1885, which provided that "the court in the judgment shall direct the amount due sub-contractors to be paid out of the proceeds of sales before any part of such proceeds are paid to the contractors," has been abrogated by the present law. No case has been referred to by the counsel to sustain his contention, and I am, therefore, unable to assent to it as correct. Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410, and cases cited.

8. The contract between the parties provided that all payments "shall be made upon written certificates of the architect to the effect that such payments have become due." If an architect, under such a provision in a contract, unjustly refuses to give a certificate, such refusal does not defeat the right of the contractor to a payment; but in this case, on the evidence, I am of the opinion that the plaintiffs never became entitled to any certificate.

9. Nothing having been paid under the contract, and it having cost, as the defendant Fagen shows, the sum of $1,592.69 to finish the work, the account between the plaintiffs and the defendant Fagen would stand as follows: Contract price, $2,366; amount paid by Fagen, $1,592.69; leaving a balance of $773.31 due apparently to the plaintiffs. The lienors who have answered in this case are Nolan, whose lien was filed December 6, 1898, for $138, and Kelly & Dwyer, whose lien was filed January 10, 1899, for $372.05, and Low & Flogaus, whose lien was filed January 26, 1899, for $124. These parties are entitled to interest from the date of the filing of their lien. The architect's fees are also shown to have been $55 and $66.80. These several sums amount in all, without interest, to $756.29, as follows: Nolan, $138.44; Kelly & Dwyer, $372.05; Low & Flogaus, $124; architect, $121.80,—total, $756.29. With interest added, they will amount to more than the difference between the contract price and the sum required to complete the work. Foshay v. Robinson, 137 N. Y. 134, 32 N. E. 1041.

10. Judgment should therefore be entered that the said sum of $773.31 be devoted to the payment of the liens aforesaid, and for the enforcement thereof by sale of the premises mentioned in the complaint. In all other respects there must be judgment for the defendants Fagen and Larkins. All questions of costs will be reserved until the filing of the decision. Draw decision and judgment accordingly, and settle on five days' notice.

Judgment accordingly.