PIPER ET AL., RESPONDENTS, *v.* MURRAY ET AL., APPELLANTS.

(No. 2,962.)

(Submitted April 5, 1911.   Decided April 22, 1911.)

[115 Pac. 669.]

*Building Contracts—Extra Work—Presumptions—Burden of Proof—Evidence—Jury—Waiver—Instructions.*

Contracts—Actions for Breach—Pleading—Allegations as to Certificate of Architects.
    1.   Where a complaint, in an action on a building contract brought by the contractors, alleged performance of the contract according to its terms, and that the architects' certificate, authorizing final payment, had been demanded, and that it was refused for no fault of plaintiffs, but because of a suit begun against the architects by the defendants, it is sufficiently shown that the certificate was withheld arbitrarily, or for a cause over which the plaintiffs had no control, and such showing is all that is necessary.

Same—Building Contracts—Extra Work—Necessity of Order.
    2.   Where a building contract provides that no extra charges shall be made unless there shall be an order in writing fixing the price, there can be no charges for extra work, whether alterations in the plan of doing the work, or additions in and about the building, unless the order or certificate has first been made.

Same—Actions for Breach—Evidence—Presumption.
    3.   In an action on a building contract, the terms of which provide that nothing was to be considered an extra unless agreed upon in writing, and in which no writing is produced, there is a presumption, in the absence of writing, that there were no extras.

Evidence—Parol Evidence Affecting Rights—Contracts for Building.
    4.   Plaintiffs brought action upon a building contract, by the terms of which nothing was to be considered an extra unless agreed upon in writing, before the doing of such extra work, and signed by the owner, the contractors, and certified by the architects, and, without pleading or showing any modification or waiver of the terms of the contract, plaintiff was permitted to testify that the plans and specifications had been changed, and that extras had been agreed upon in writing, and to state the total amount of such extras without producing any agreements in writing.   *Held,* that the effect of this testimony was to erroneously modify a written contract by parol evidence.

Contracts—Action for Breach—Burden of Proof.
    5.   In an action on a building contract for compensation, by the terms of which there was to be no change of the specifications and no extra work unless agreed upon in writing, the burden of showing that there were extras to which payments made under the contract might be applied was on the plaintiff.

Evidence—Matters Directly in Issue—Substantial Performance of Building Contract.
    6.   Where one of the plaintiffs, in an action to recover a balance on a building contract, gave testimony showing that he was an expert on contract work, he was properly allowed to testify that he constructed the building, furnished the materials, and performed the work in general conformity with the plans and specifications.

*Same—Opinion Evidence—Cross-examination of Expert.*

7. Where an expert on contract work was called in a contractors' action for a balance alleged to be due under a written contract, and testified as to the fact of certain cracks in the concrete upon the building, he could not properly be asked on cross-examination where he would place the blame therefor, or whose duty it was to provide for expansion and contraction of the cement work.

*Same—Opinion Evidence—Conclusion of Witness.*

8. In an action by contractors upon a building contract in which there was evidence of substantial performance, a question to a witness, who had made an inspection of the building and testified to certain defects in construction, whether in his opinion, as a practical builder, the contractors were entitled to receive, or the architects entitled to give, a final certificate of the work according to the plans and specifications, was properly excluded as calling for a conclusion of the witness, which was for the architects under the contract, and ultimately for the jury.

*Trial—Appeal and Error—Review—Discretion of Trial Court—Permitting Jury to Inspect Building.*

9. The matter of allowing the jury, in an action on a building contract, to inspect the building many months after its alleged completion, was within the sound legal discretion of the trial court, which will not be reviewed unless an abuse is shown.

*Contracts—Action for Breach—Instruction—Waiver.*

10. In an action by a contractor upon a building contract, which provided that no certificate given or payment made, except the final certificate or payment, should be conclusive evidence of the performance of the contract, either wholly or in part, and that no payment should be construed as an acceptance of defective work, and in which no waiver of such certificate was pleaded, an instruction that, although the contract provided that payment should be made to plaintiffs only upon the architects' certificate, yet, if defendant had made payments without requiring the production of such certificates, then such requirement had been waived, and the failure to procure such certificate was not a bar to this action, was erroneous as not applicable to the theory of plaintiff's action.

*Trial—Instructions—Reading Instructions Together.*

11. Instructions, which are correct when read in connection with other instructions, are not erroneous.

*Appeal from District Court, Park County; Frank Henry, Judge.*

ACTION by W. E. Piper and Ernest F. Piper, copartners doing business under the firm name of the Piper Construction Company, against James A. Murray and The Monida Trust. Judgment for plaintiffs, and defendants appeal from it and an order denying them a new trial. Reversed and remanded.

*Mr. James E. Murray,* and *Mr. O. M. Harvey,* submitted a brief in behalf of Appellants. *Mr. Murray* argued the cause orally.

The complaint does not state facts sufficient to constitute a cause of action. The production of the architects' final certificate was

a condition precedent in the contract relied upon by plaintiffs, and it was necessary for plaintiffs to allege and prove its production, or show that it was waived by defendant, or withheld by collusion between the architects and the defendants, or fraud of the architects. The mere allegation that the architects refused the same because the defendant Murray had "started a suit against them" is not sufficient. In all of the authorities cited in the case of *McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428, it will be found that the plaintiffs were excused from producing the certificate because the same was withheld by reason of the fraud or mistake of the architects, or because of some collusion between the architects and the defendants. (*Hudson* v. *McCartney,* 33 Wis. 331; *Hanley* v. *Walker,* 72 Mich. 607, 45 N. W. 57, 8 L. R. A. 207; *Schmidt* v. *North Yakima,* 12 Wash. 121, 40 Pac. 790; *Michaelis* v. *Wolf,* 136 Ill. 68, 26 N. E. 384; *Byrne* v. *Sisters of Elizabeth,* 45 N. J. L. 213.) It is true defendants waived this condition to the extent of the payments which they voluntarily made without requiring a compliance therewith, but it would not follow that by so doing they were debarred from insisting upon it whenever they saw fit to do so for their protection, nor would it tend in the least degree to excuse the plaintiffs from performing it on their part before they would be entitled to maintain an action for any balance which might be their due. (*Brown* v. *Winehill et al.,* 3 Wash. 524, 28 Pac. 1037; *McNamara* v. *Harrison,* 81 Iowa, 486, 46 N. W. 976.)

Where the contract provides that extras shall not be charged for without a written order, nothing but a written order will support the claim. (*Vandewerker* v. *Vermont Ry.,* 27 Vt. 130; *Baltimore Co.* v. *Coburn,* 7 Md. 202; *Abbott* v. *Gatch,* 13 Md. 314, 71 Am. Dec. 635.) This question is elaborately considered and decided by this court in the case of *Wortman* v. *Kleinschmidt,* 12 Mont. 316, 30 Pac. 280. The plaintiffs did not pretend to show what this alleged extra work or materials consisted of, but satisfied themselves with giving the mere conclusion that the alleged extras and contract price together amounted to the sum of $79,096.55. A witness cannot be permitted to give his conclusion in answer to a question embracing the merits of a

case. The questions propounded to the witnesses regarding the performance of the contract involved the precise question to be determined by the jury, and was an invasion of the province of that body. (*Conner* v. *Stanley*, 67 Cal. 315, 7 Pac. 723; *Pelamourges* v. *Clark*, 9 Iowa, 1; *Bugbee Land Co.* v. *Brento* (Tex. Civ. App.), 31 S. W. 695; *Smuggler Mining Co.* v. *Broderick*, 25 Colo. 16, 71 Am. St. Rep. 106, 53 Pac. 169; *Combs* v. *Ditch Co.*, 17 Colo. 146, 31 Am. St. Rep. 275, 28 Pac. 966; *Clarke* v. *Case*, 144 Mich. 148, 107 N. W. 893.) The witness should have stated the facts and permitted the jury to have drawn the conclusions. (*Brown* v. *Cloud Co. Bank*, 2 Kan. App. 352, 42 Pac. 593; *Teerpenning* v. *Corn Exchange Co.*, 43 N. Y. 281.) This court has upheld and enforced the foregoing doctrine in many cases. (*Hamilton* v. *Monidah Trust*, 39 Mont. 269, 102 Pac. 335; *Howie* v. *California Brewery*, 35 Mont. 264, 88 Pac. 1007; *Metz* v. *City of Butte*, 27 Mont. 506, 71 Pac. 761.)

The refusal of the court to permit the jury to view the premises was an abuse of discretion. It seems to be the opinion of the ablest courts of the country that such view should be granted the jury in cases where the evidence is contradictory and a mere view of the premises would put the jury in a position of deciding the issues fairly and accurately. (*Ormund* v. *Granite Mt. Co.*, 11 Mont. 303, 28 Pac. 289; *Smith* v. *Morse*, 148 Mass. 407, 19 N. E. 393; *Washburn* v. *Milwaukee Co.*, 59 Wis. 364, 18 N. W. 328; *Denver Co.* v. *Pulaski Co.*, 11 Colo. App. 41, 52 Pac. 226; *In re Parcel of Westervelt*, 58 Hun, 611, 12 N. Y. Supp. 859; *Weiant* v. *Rockland Lake Co.*, 61 App. Div. 383, 70 N. Y. Supp. 718.)

In behalf of Respondents, *Mr. F. B. Reynolds* submitted a brief and argued the cause orally.

Under the facts of this case plaintiffs were excused from producing the architects' certificate of the completion of the building. We contend that the reason given by the architects for the refusal of the certificate was capricious, unreasonable and arbitrary in so far as the plaintiffs were concerned; that the plain-

tiffs were prevented from procuring such certificate by causes over which they had no control whatever, and that they are thereby excused from securing it. This court has recognized many different reasons as sufficient to excuse the nonproduction of the architects' certificate. Among these are mentioned bad faith, oppression, injustice, dishonesty, arbitrariness, unreasonableness and improper refusal. (*Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280.) In a later case the rule respecting the issue involved in this case was laid down as follows: ''The complaint must state that such certificate was given or demanded, and if refused, the reasons why it should have been given, or if waived, a statement of that fact.'' (*McGlauflin* v. *Wormser*, 28 Mont. 177, 72 Pac. 428.)

The complaint and proofs in this case come within the rule above enunciated. (See, also, 6 Cyc. 89; 13 Current Law, 560; *Bannon* v. *Jackson*, 121 Tenn. 381, 130 Am. St. Rep. 778, 117 S. W. 504, 17 Ann. Cas. 77; *Neagle* v. *Herbert*, 73 Ill. App. 17; *McConologue* v. *Larkins*, 32 Misc. Rep. 166, 66 N. Y. Supp. 188; *Dyer* v. *Middle-Kittitas Irr. Dist.*, 25 Wash. 80, 64 Pac. 1009; *Windham* v. *Telephone Co.*, 35 Wash. 166, 76 Pac. 936; *Halsey* v. *Waukesha Springs Co.*, 125 Wis. 311, 110 Am. St. Rep. 838, 104 N. W. 94.)

Plaintiffs also contend that there was a waiver of the certificate by the defendants in several different ways. It was waived by making payment upon the final installment after the completion of the work without requiring a certificate (*Blethen* v. *Blake*, 44 Cal. 117; *Hunn* v. *Pennsylvania Institution etc.*, 221 Pa. 403, 70 Atl. 812, 18 L. R. A., n. s., 1248; *Byrne* v. *Sisters etc.*, 45 N. J. L. 213); by at that time promising to pay the balance without making the production of the certificate a condition precedent thereto; by discharging the architects before the settlement was concluded (*Diehl* v. *Schmalacker*, 30 Misc. Rep. 786, 62 N. Y. Supp. 1080); by refusing payment of the balance due on other grounds than the failure to produce such certificate (*Ashland Lime Salt & Cement Co.* v. *Shores*, 105 Wis. 122, 81 N. W. 136; *Tilden* v. *Buffalo Office Building*, 27 App. Div. 510, 50 N. Y. Supp. 511; *McInnis* v. *Buchanan*, 53 Or. 533, 99 Pac.

929) ; and by not pleading in their answers the failure of plaintiffs to procure such certificate as a defense to the action. (*Healey* v. *Fallon,* 69 Conn. 228, 37 Atl. 495; see, also, 30 Am. & Eng. Ency. of Law, 2d ed., 1246; *Haden* v. *Coleman,* 73 N. Y. 567; *Abramson-Engesser Co.* v. *McCafferty,* 86 N. Y. Supp. 185; *Ashland Lime Salt & Cement Co.* v. *Shores,* 105 Wis. 122, 81 N. W. 136; *Lunsford* v. *Wren,* 64 W. Va. 458, 63 S. E. 308; *Fuchs* v. *Saladino,* 133 App. Div. 710, 118 N. Y. Supp. 172.)

The weight of the evidence is to the effect that the contractor fulfilled his part in erecting a building as required by the specifications, and after they had done that they had fulfilled all their obligations.    Where a contract for the erection of a building prescribes that it shall be done according to certain specifications, the contractor is not accountable for unsatisfactory results, providing he has complied with the specifications. (*Cannon* v. *Hunt,* 116 Ga. 452, 42 S. E. 734; *Harlow* v. *Borough of Homestead,* 194 Pa. 57, 45 Atl. 87; *McKnight-Flintick Stone Co.* v. *Mayor of New York,* 160 N. Y. 72, 54 N. E. 661.)

It has been held that questions whether or not certain work was constructed in accordance with the contract and specifications are admissible on the ground that the same do not call for conclusions, but for a statement of fact. (*Taulbee* v. *Moore,* 106 Ky. 749, 51 S. W. 564; *Stark Grain Co.* v. *Harry Bros. Co.* (Tex. Civ. App.), 122 S. W. 947; *McKarsie* v. *Citizens' Bldg. & Loan Assn.* (Tenn. Ch.), 53 S. W. 1007; *New York C. I. C.* v. *U. S. Radiator Co.,* 174 N. Y. 331, 66 N. E. 967; *Bellows* v. *Crane Lumber Co.,* 119 Mich. 424, 78 N. W. 536.)

The rule that the architect is the agent of the owner of the building and that his act is an act of the owner is sustained by the following cases: *Boston Store* v. *Schleuter,* 88 Ark. 213, 114 S. W. 242; *Fransen* v. *Regents,* 133 Fed. 24, 66 C. C. A. 174; *Teakle* v. *Moore,* 131 Mich. 427, 91 N. W. 636; *Halsey* v. *Waukesha Springs Sanitarium, supra.*

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in Park county to recover the sum of $1,694.37, balance alleged to be due for material furnished and

labor performed upon the Hunters Hot Springs hotel and natatorium, under a written contract with the defendant Murray, acting as agent for the defendant, The Monida Trust, a corporation. The cause was tried to the district court, sitting with a jury. A verdict for $1,200 was rendered in favor of the plaintiffs. From a judgment in the amount of the verdict and an order denying a new trial, the defendants have appealed.

The complaint, after setting forth the contract showing that "payments shall be made only upon certificate of the architects," alleges that "plaintiffs have furnished all the materials and performed all the labor mentioned in said contract to be by them furnished and performed in accordance with the terms thereof, and have in every respect faithfully performed all the conditions of said contract on their part, and all of said work was completed on the 3d day of August, 1909." It is then further alleged that the sum of $1,694.37 remains due and unpaid, and "that plaintiffs have not secured the certificate of the architects authorizing the final payment upon said contract as required by the terms thereof, but have made repeated demands upon them for such certificate, and said architects have refused the same, not because of any fault of plaintiffs, but for the reason that defendant Murray has started suit against them, has made payments to plaintiffs without their certificates and without their knowledge, and has practically taken the matter out of their hands."

1. It is contended that the complaint does not state facts sufficient to constitute a cause of action, for the reason "that it was necessary for plaintiffs to allege and prove the issuance of the certificate, or show that it was waived by defendants, or withheld by collusion between the architects and the defendants, or [1] fraud of the architects." We think, however, that the complaint sufficiently shows that the certificate was withheld arbitrarily, or at least for some cause over which the contractors had no control, and such showing is all that is necessary. (*Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280; *McGlauflin* v. *Wormser*, 28 Mont. 177, 72 Pac. 428; 6 Cyc. 88; *Windham* v. *Independent Tel. Co.*, 35 Wash. 166, 76 Pac. 936; *Halsey* v.

*Waukesha Springs Sanitarium,* 125 Wis. 311, 110 Am. St. Rep. 838, 104 N. W. 94; *Dyer* v. *Irr. Dist.,* 25 Wash. 80, 64 Pac. 1009; *McConologue* v. *Larkins,* 32 Misc. Rep. 166, 66 N. Y. Supp. 188; *Neagle* v. *Herbert,* 73 Ill. App. 17; *Bannon* v. *Jackson,* 121 Tenn. 381, 130 Am. St. Rep. 778, 117 S. W. 504; *Michaelis* v. *Wolf,* 136 Ill. 68, 26 N. E. 384; *Schmidt* v. *City of North Yakima,* 12 Wash. 121, 40 Pac. 790; *Bentley* v. *Davidson,* 74 Wis. 420, 43 N. W. 139; *Byrne* v. *Sisters of Charity,* 45 N. J. L. 213.)

2. Contention is made that the evidence is insufficient to sustain the verdict: First, as we understand it, because plaintiffs failed to show a substantial compliance with the terms of the contract on their part; and, second, because the competent evidence in the record, as distinguished from that which is incompetent and irrelevant, discloses the fact that they have been fully paid. First. We think the court properly submitted to the jury the question whether plaintiffs' part of the contract was substantially performed. Second. We agree with appellants on this point. It is alleged in the complaint that the contract price was $70,000, upon which the sum of $68,305.63 has been paid, leaving a balance due of $1,694.37. There is no word of extras in the pleading. The record shows that appellants have paid the sum of $77,402.18 on the contract. To offset this apparent overpayment of $7,402.18, plaintiffs undertook to show that they furnished extra work and material to the amount of $9,096.55, and had applied to the payment of this sum certain of the moneys paid by appellants under the contract. Under the head of "extra work," the specifications attached to the contract provided: "The owner reserves the right to make any changes whatever, either in the quality or quantity of the work or materials that he may think fit, and the value of the said change or changes, either more or less, must be added to or deducted from the face of the contract. Nothing shall be considered an extra, unless it is agreed upon in writing before said extra work is done, and signed by the owner and contractor and certified to by the architects; and nothing shall be considered as extra work unless consequent upon some specific change in the plans or specifications. No change in the plans or these specifications can be made with-

out the written order of the architects with the approval of the owner."

In the case of *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280, this court quoted with approval excerpts from the following cases: *Russell* v. *Da Bandeira*, 13 Com. B., N. S., 149, and *Abbott* v. *Gatch*, 13 Md. 314, 71 Am. Dec. 635. The doctrine laid down in those cases is that, where the contract provides that [2] no extra charges shall be made unless there shall be an order in writing fixing the price, there can be no charge for extra work, no matter what it may be, whether alterations in the plan or mode of doing the work, or additions or improvements in and about the completion of the building, ship, or other structure, unless the order or certificate has first been made. Mr. Chief Justice Blake, in writing the opinion of this court, said: "The contrary rule is a dangerous standard, and impairs the value, and renders uncertain every written contract for the construction of an edifice."

At the trial of this case the following proceedings took place while Mr. W. E. Piper, one of the plaintiffs, was a witness: Direct examination: "Q. In building this hotel building were there a number of extras, or not? (Objected to as immaterial and irrelevant under the pleadings. Objection overruled, and exception noted.) Q. Was there considerable extra work done on the work on this building? A. There was. Q. Can you state the amounts the extra work came to? Defendants' Counsel: The contract already in evidence provides as to the extra work and what shall be considered extra work. Nothing considered extra work unless it is agreed upon in writing. Q. Mr. Piper, were certain extras ordered by the architects in the progress of the work? (Objected to as incompetent; the contract calls for orders to be in writing. Objection overruled. Exception noted.) A. There were. Q. Were such agreements for extras made in writing? A. They were. Q. And were the prices for such extras agreed upon? (The defendants ask that the writing be produced as the best evidence.) Q. The extras were agreed upon in writing, were they? A. Yes, sir. (Objected to as incompetent.) Court: It is proper to state if they were; as to

what they were, the writing is the best evidence.  Q. Mr. Piper, can you state the total amount that was agreed upon between you and the architects and Mr. Murray that would be paid for the extra work?  (Objected to as immaterial and incompetent under the pleadings; the contract required such matter to be determined in writing.  Overruled.  Exception.)  A. The extras amounted to $9,096.55.  (Objected to as calling for a conclusion of the witness.  Overruled.  Exception.)  Q. What, then, was the total amount due your firm for work on the hotel building, for extras and the contract which was originally made?  (Objected to as calling for a conclusion of the witness.  Overruled.  Exception.)  A. $79,096.55.''

It will be noted that the plaintiffs were thus allowed to testify, not only that the plans and specifications were changed, but that extra work to the amount of over $9,000 was performed, and this without producing any written order or certificate as a basis for either claim.  Under the terms of the contract, ''nothing was to be considered an extra unless agreed upon in writing.''  No writing was produced, and in its absence the presumption was that there were no extras.  Counsel for respondents say in their brief: ''The fact is, however, that plaintiffs did not attempt to prove what the extra work was nor the contents of any written instrument.''  But this argument is fallacious.  They were, in fact, allowed to testify that they had performed extra work, without producing the only evidence which would prove, under the terms of the contract, that such work was extra work, to-wit, a written agreement or certificate.  This, in effect, was proving the contents of a writing by parol.  It will not do to say that they proved that there was such a writing, and therefore they were not obliged to produce it.  Being in existence, it was the only evidence of their right to charge for extras, and the mere fact of its existence, or rather that the witness was willing to testify that it existed, did not absolve them from the duty of actually producing it, to the end that the court might judge whether it was such an agreement or order as would justify a charge for extras.  So long as it was not produced, it had no efficacy whatsoever.  The effect of the ad-

mission of this testimony was that plaintiffs, by indirection, were permitted to modify the terms of the only contract mentioned in their complaint, a contract which was therein alleged to be in writing. No attempt was made, either by pleading or proof, to show a modification or waiver of the terms of this contract; and it will be noted that Mr. Piper did not testify that Murray had agreed, even orally, to pay them for extra work. The indirect effect of this testimony was to place upon the appellants the burden of proving that respondents had no right or authority to make an application of payments, when in fact and in law the burden was on them to prove that they had such right.

3. At the beginning of the testimony of the plaintiff E. F. Piper, he was allowed to testify, over objection, that plaintiffs had constructed the building, furnished the materials, and performed the work in general conformity with the plans and specifications. We think the testimony was unobjectionable. The witness had already testified that he had had twenty-two years' experience as a builder, and that he was "on the job most of the time," although he had made trips to Billings. He was not, however, able to say of his own knowledge that every detail of the contract had been carried out in strict conformity with its terms. The question was simply preliminary. In trying a case of this nature, some foundation must be laid for showing a right of action on the part of the plaintiff. It will not do to take up the time of the court by inquiry, in the first instance, as to every detail. Liberal opportunity for cross-examination should, of course, be allowed, and if, upon inquiry as to particular portions of the work, it develops that the contract has in fact been breached, the court and jury will readily note the fact. We see no objection, in a case like this, to allowing a plaintiff who is an expert and generally conversant with the details of the work, to testify that it has been performed in substantial conformity with the plans and specifications attached to the contract.

4. If we assume that the plaintiffs performed their part of the contract in substantial compliance with its terms (a question of

fact which was properly submitted to the jury), we think the testimony sufficiently shows that the architects acted arbitrarily in withholding a final certificate, or, at any rate, that it was not withheld because of any fault of the plaintiffs.

5. One Otto Stoelker, an expert in concrete work, testified as to certain cracks in the concrete upon the building. He was asked by defendants' counsel, on cross-examination, "Where [7] would you place the blame in the cracking of the cement work?" The court properly sustained an objection to this question, and also to the following, "Whose duty is it to provide for expansion and contraction?"

6. The witness E. F. Piper testified for the plaintiffs that he knew that the sand used was the best quality the locality afforded, because a man told him so. This, of course, was hearsay; but the motion to strike it out was somewhat trivial.

7. While it was proper to allow Piper to testify in answer to a preliminary question, and in view of his general acquaintance with the work, that all of the specifications of the contract were substantially carried out, it was not error to refuse to allow the defendants' witness Brookman to answer this question, "In your opinion as a practical builder, Mr. Brookman, state whether or not the contractors were entitled to receive, or the architects in charge entitled to give, a final certificate of this work, according to the plans and specifications." Brookman had inspected [8] the building on the day before he was called as a witness, and had testified to what he claimed were certain defects in its construction. The court was correct in not allowing him to substitute his judgment in place of that of the architects or the jury, as to whether plaintiffs were entitled to a certificate entitling them to final payment.

8. It is contended that the court erred in admitting a certain Exhibit "G" in evidence, over defendants' objection, being a letter from Link & Haire, the architects, to the Piper Construction Company. If the letter shows anything, it is that plaintiffs had not completed their contract at the time it was written; but,

43 Mont.—16

in so far as their case is concerned, we think it not only irrelevant, but many portions of it are incompetent.

9. The matter of allowing the jury to inspect the hotel, **[9]** many months after its alleged completion, was within the sound legal discretion of the trial court, and we find no abuse of that discretion.

10. It is contended that the court erred in giving the following instruction: "(3) You are instructed that, although the contract in question in this case provides that payments shall be made to plaintiffs only upon the architects' certificate, yet if you find that defendant, The Monida Trust, has made payments to plaintiffs without requiring the production of such certificates, then such requirement has been waived by said defendant, and the failure to procure such certificate is not a bar to this action." **[10]** We think this instruction should not have been given. The complaint is not framed on the theory that the final certificate was waived. Article 10 of the contract expressly provides that "no certificate given or payment made, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and no payment shall be construed to be an acceptance of defective work or improper materials."

11. We think instructions Nos. 4 and 5, of which complaint **[11]** is made, correctly interpret the contract, and the law relating thereto, when read in connection with the other instructions.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied May 11, 1911.