[Civil No. 2789.   Filed March 23, 1931.]

[297 Pac. 445.]

GUARANTEE TITLE & TRUST COMPANY, a Corporation, as Administrator in Arizona of the Estate of C. E. GREEN, Deceased, Appellant, v. H. T. WILLIS and B. L. WILLIS, Copartners Doing Business Under the Firm Name and Style of H. T. WILLIS & SON, Appellees.

Mr. F. M. Gold and Messrs. Favour & Baker, for Appellant.

Messrs. Norris, Flynn & Patterson, for Appellees.

LOCKWOOD, J.—H. T. Willis and B. L. Willis, hereinafter called plaintiffs, brought suit against C. E. Green, hereinafter called defendant. The original complaint sought to recover $8,878.92, alleged to be due plaintiffs for work performed under a certain contract between the parties. Some months later it was amended by adding thereto four items. The first was for extra work alleged to have been performed at defendant's request, of the value of $2,961.40; the second was for $5,000 for extra work caused by defendant's failure to remove a pipe-line; the third was for $1,000 extra work caused by defendant's construction of a trench line which interfered with plaintiffs' operations; and the fourth was for $4,000 for extra work in removing certain dirt over an embankment.

Defendant demurred to the amended complaint on the ground that there were improperly united an action in contract and one in tort; filed a plea in abatement and various motions, all of which were overruled, and then answered, alleging, in substance, that the plaintiffs had already been overpaid for the work actually done under the contract, and that the extra work mentioned in the four special items above described, if indeed plaintiffs had been damaged thereby as they stated, was done as a result of the terms of the contract, and was not made necessary

through any fault of defendant. The latter then set up, both in the answer and in a cross-complaint, that plaintiffs had without legal cause abandoned their contract before it had been completed, and that he was compelled to finish it at a cost to him of $16,-492.95, for which he prayed judgment, together with the amount which he claimed plaintiffs had been overpaid for the work actually done. The case was tried to a jury, which returned a verdict in favor of plaintiffs in the amount of $7,500, and, after the usual motion for a new trial had been made and overruled, this appeal was taken. Defendant having died in the interim, an administrator was appointed and substituted as a party in this court.

There are some twenty-six assignments of error, but we prefer to discuss the case on certain legal principles involved which will necessarily determine the appeal, rather than to refer to the specific assignments. There is singularly little conflict in the evidence as to the matters necessary for a proper disposition of the case, and we therefore state the facts as follows:

The town of Flagstaff desired to install a new water system and advertised for bids for its construction. The Burns & McDonnell Engineering Company, of Los Angeles, California, prepared the plans and specifications for the work, and represented the town in all dealings with the parties, and we shall refer to such company or its representatives in charge of the work on the ground as the engineer.

Defendant herein secured the contract for the construction of a large concrete reservoir, which was to be one of the units of the system. Shortly thereafter plaintiffs came to him and offered to subcontract the work of excavating the reservoir. After some negotiation and discussion they entered into a contract, which reads in part as follows:

"Whereas the party of the second part has been awarded the contract with the town of Flagstaff, Arizona, to construct a 50,000,000 gallon Reservoir for the said town, the said contract, plans and specifications becomes a part of this contract in so far as it pertains to the excavation and embankment for said Reservoir as though they were set out full herein.

"That the said parties of the first part, in consideration of the covenants on the part of the said party of the second part hereinafter contained, hereby covenants with the said party of the second part that the said parties of the first part will furnish all labor, tools and equipment except Roller and do all excavating and embankment ready for placing Concrete Lining for the 50,000,000 Gallon Reservoir for the town of Flagstaff, Arizona, and will do all excavating, spreading, wetting, rolling and hand-finishing, ready for concrete for said reservoir *as directed by the party of the second part and the City Engineers* of the town of Flagstaff, Arizona, and according to the Plans and Specifications for the building of said Reservoir.

"The parties of the first part agrees to excavate not less than 1200 cubic yards each day until said contract is completed, Sundays excepted and complete said excavation in eighty days from April 13th, 1925.

"If parties of the first part fails to excavate an average of 1200 cubic yards each day and shall fail after requested by the party of the second part to put on additional teams, men and equipment on in order to excavate the 1200 cubic yards per day, the party of the second part may put equipment, teams or other devices to work to excavate said Reservoir and charge parties of the first part with said expense, and with-hold said expense from moneys due to party of the first part.

"Parties of the first part agrees to carry Workmens Compensation in accordance with the Arizona State Laws, and will furnish party of the second part satisfactory evidence that they have paid all labor and material when receiving estimates.

"The party of the second part in consideration of the Covenant by the parties of the first part hereinbefore contained agrees to and with the said party of the first part, that the said part— of the second part will furnish a Gas, Steam or Concrete roller. Parties of the first part to pay expenses of operating said Roller. The party of the second part will pay to the parties of the first part twenty-six cents per cubic yard for all completed excavation and embankment *as determined by the City Engineers of Flagstaff, Arizona,* as follows to wit: He will pay parties of the first part Estimate on completed work twice each month on about the 5th and 20th as follows: the said party of the second part will pay to the said parties of the first part, Estimates based on 50% of the first 50% of total excavation; 75% of the next 25% of the total excavation; 90% of the last 25% of the total excavation, after deducting any money paid to or for the said parties of the first part and will pay the parties of the first part the retained percent, thirty-five days after the parties of the first part has completed this contract *to the satisfaction of the party of the second part,* and furnish to the party of the second part satisfactory evidence that all labor and material bills have been paid by the parties of the first part.

"And for the true and faithful performance of all and every of said covenants the said parties of these presents bind themselves, each unto the other, in the penal sum of $12,500.00 Dollars, gold coin of the United States of America, as fixed, settled and liquidated damages to be paid by the failing party. . . . " (Italics ours.)

Plaintiffs commenced their work some time in April, and about the middle of June had excavated to a depth where they encountered the main pipe-line of the then existing water system of the town of Flagstaff. The plans and specifications, which were a part of both the contract of plaintiffs with defendant and of defendant with the town, showed this pipeline, and all bids of the parties had been made with

the knowledge that it was there. The specifications made the following provision in regard thereto:

"Contractor's attention is called to the fact 'that the construction of new reservoir under this contract is contingent upon changes in piping layout at present basins. The Engineers will not permit the interruption or impairment of water service to the Town under any circumstances."

Plaintiffs on reaching it urged defendant immediately to construct a temporary pipe-line which was mentioned in the specifications, so that they could remove the line in the reservoir, but the engineer refused to allow the latter line to be moved till some time in August, when other arrangements had been completed for supplying the town with water. Defendant under his contract had to put in the main outlet system for the reservoir, and, acting strictly under the directions of the engineer, dug a trench line for that purpose through the site of the embankment where plaintiffs were placing the dirt excavated from the reservoir. As a result thereof plaintiffs were compelled to do a certain amount of extra work which would not have been necessary if they had been allowed to dump dirt over the site of the trench line before the latter was built.

There was more dirt in the reservoir than was necessary to build the embankment around it, and plaintiff built the embankment first and then hauled a large quantity of dirt up over the embankment and dumped it on the outside. It was their contention that the contract provided that all dirt excavated should be used on the embankment, and that, by reason of the fact it could not be so used, they had been put to an additional expense in moving it not contemplated by the contract, and should be reimbursed therefor.

The contract also provided that the embankment should be built originally of a greater thickness than it was finally to be, spread and rolled, and then stripped down to correct dimensions without extra charge by the contractor. Plaintiffs moved 5,695 yards of dirt twice for this reason, and contend that they were compelled by the engineer to move more dirt for this purpose than was required under the contract, for which they should be paid.

Plaintiffs were paid from time to time for the work actually done on engineers' estimates, as provided by the contract, the total payments, including those made directly to them, and by their orders to others, being $26,734.68, but when the final estimates were made by the engineer it appeared therefrom that the total amount of excavation, including both that done by plaintiffs and that done by defendant after the former had abandoned the work, was worth the sum of $23,728.76, at the prices fixed in the contract between plaintiffs and defendant.

In November, 1925, plaintiffs notified defendant that owing to weather conditions they were quitting work for the winter. Defendant protested and notified them if they quit he would consider their contract breached. Notwithstanding this they did quit, and defendant finished their subcontract, at an undisputed cost to him of $16,492.95.

It also appears that all of the work done by both plaintiffs and defendant, and involved in this action, was performed under the instructions of the engineer, and that the pipe-line was not moved sooner because the engineer forbade it.

The most important question of law involved is the extent of the authority of the engineer over the work done. The plans and specifications contain, among others, the following provisions:

"The Contractor agrees by these articles to perform all the work provided in the plans, to furnish all

materials called for and specified and to furnish all labor, tools, and equipment necessary for the complete execution of the plans in conformity with the specifications *and the direction of the Engineer,* at the prices herein agreed upon and fixed therefor.

"The Contractor shall accept the plans and specifications as mutually cooperative and *subject to the Engineer's interpretation of intent or meaning* of anything contained or implied therein. . . .

"The Contractor shall outline and pursue a program of construction *which shall recognize any requirements of the Purchaser mentioned elsewhere herein as to interruptions to routine, convenience to the public, etc., and with such diligence and rapidity as is, in the judgment of the Engineer, consistent with good workmanship and economy.* . . .

"Should the Contractor neglect or refuse at any time to prosecute the work with sufficient rapidity, the Engineer may, after five (5) days' notice, employ such additional help, at the Contractor's expense, as is necessary in his judgment to protect the Purchaser against undue delay in time of completion. . . .

"*Upon order of the Engineer, the work may be suspended for any substantial cause, such as unfavorable weather conditions.* . . .

"*The decision of the Engineer shall be final and binding in all questions relating to additional, omitted or changed work.* . . .

"Contractor's attention is called to the fact that the construction of new reservoir under this contract is contingent upon changes in piping layouts at present basins. *The Engineers will not permit the interruption or impairment of water service to the town under any circumstances.* . . .

"The excavation shall conform to the lines and grades as shown in the drawings or given by the Engineer. . . .

"The Contractor shall use excavated material and construct the embankment in accordance with the slopes and dimensions shown on the plans and the lines and grades given by the Engineer. Embankment shall be brought to preliminary lines as shown on drawings and shall be trimmed after embankment

is compacted. *No allowance is made in quantities of excavation, nor will it be made in final estimate for this trimming. . . .*

"Contractor shall furnish and lay a temporary water line around the site of the new reservoir before removing present lines serving the town." (Italics ours.)

The contract between the parties makes these provisions a part thereof, and in addition provides the work shall be done "as directed by the party of the second part and the City Engineers of the Town of "Flagstaff," and that payment therefor shall be made for the completed work "as determined by the City Engineers." It is contended by defendant that these provisions in effect make the engineer the sole judge as to each and all of the various items on which plaintiffs seek recovery, and that, since the engineer has decided against the latter on each of the items, they cannot recover. It is the theory of plaintiffs, on the other hand, that the decision of the engineer is not binding on plaintiffs as to the matters in controversy.

Many building and construction contracts endeavor to give the engineer in charge of the work certain powers over it, and such contracts have frequently been before the courts for construction. The weight of authority is to the effect that such contracts are valid and binding on the parties according to their terms. *Ripley* v. *United States,* 223 U. S. 695, 56 L. Ed. 614, 32 Sup. Ct. Rep. 352; *Rialto Const. Co.* v. *Reed,* 17 Cal. App. 29, 118 Pac. 473; *Holmes* v. *Richet,* 56 Cal. 307, 38 Am. Rep. 54; *Young* v. *Stein,* 152 Mich. 310, 125 Am. St. Rep. 412, 17 L. R. A. (N. S.) 231, 116 N. W. 195.

To this, however, there are certain exceptions: (a) The engineer may not change the terms of the contract itself. (b) Its legal interpretation is always for the courts. *Mitchell* v. *Dougherty,* (C. C. A.) 90

Fed. 639. (c) The decision of the engineer may be challenged and set aside on allegation and proof of fraud, or mistake amounting to bad faith, or failure to exercise an honest judgment. *Ripley* v. *United States, supra.* There is neither allegation nor proof of fraud, arbitrary conduct, nor mistake on the part of the engineer to be found in the record. The questions then are, Were the things of which plaintiffs complain a result of his orders, and, if so, were those orders authorized and binding on plaintiffs?

There are five items involved in the amended complaint. The first is the amount of work actually done under the terms of the contract. There can be no dispute on this point that the engineer's figures must control, and the uncontradicted evidence is that his entire allowance for the excavation, including both that done by plaintiffs and that afterwards done by defendant, amounted at the contract price to $23,-728.76. The second item is for the removal of some 5,695 yards of dirt in stripping the embankment. The contract clearly provides that the necessary stripping shall be done without extra compensation, and, since it appears the engineer determined this amount to be necessary, his judgment is binding. It is not a question of the legal meaning of the contract, but a determination of whether the work in question was stripping.

The time and manner of the removal of the pipe-line and the digging of the trench line were both matters within the discretion of the engineer. As appears from the contract it was of vital importance that the water service of Flagstaff should not be interrupted or impaired, and both plaintiffs and defendant were apprised of this fact. The engineer in his discretion determined that the only method which would prevent impairment involved a delay in removing the pipe-line, and this was clearly within his

power. Even had defendant laid the temporary pipe-line referred to in the specifications before plaintiffs started work, it is evident that the engineer would not have permitted removal of the old pipe-line until arrangements had been made for other changes in the water supply. The same principles apply to the trench line.

There remains only the item of the dirt spoiled over instead of on the embankment. Plaintiffs apparently contend their contract called for all of it being spoiled *on* the embankment, but we find no such provision, and the undisputed testimony shows clearly that the dirt in question was removed by plaintiffs in the only way in which it could be removed under the direction of the engineer.

We are of the opinion that on the law and the undisputed evidence plaintiffs could not recover on any of the items set forth in the amended complaint in the absence of allegations and proof that the engineer's decisions were fraudulent or not made in the exercise of reasonable and honest judgment.

We consider next defendant's cross-complaint. It is evident that, if plaintiffs had no right to recover for any of the special items set forth in their complaint, defendant was entitled to a judgment on his cross-complaint for at least the difference between the value of the work actually done by plaintiffs and the amount paid by defendant. But defendant claimed in addition damages for the completion of the work on the ground that plaintiffs had abandoned it.

Since the case must be reversed and remanded for a new trial, we need say no more on this point than that plaintiffs had no right to cease work on account of inclement weather, except by consent of the engineer, and, if they did so cease without obtaining his consent or that of defendant, or in case they applied

for such consent and failed to obtain it, without showing that such refusal was arbitrary and unreasonable, defendant would be entitled to recover the actual cost of completing the contract.

The judgment of the superior court of Coconino county is reversed, and the case remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.