[Civil No. 3314. Filed February 12, 1934.]

[29 Pac. (2d) 158.

THE GILLESPIE LAND & IRRIGATION COM-
PANY, a Corporation, Appellant, v. E. L.
HAMILTON, Appellee.

Messrs. Silverthorne & Van Spanckeren, for Appellant.

Mr. H. M. VanDenburgh, Messrs. Cunningham, Carson & Gibbons and Messrs. Langmade & Seed, for Appellee.

LOCKWOOD, J. — E. L. Hamilton, hereinafter called plaintiff, brought suit against Gillespie Land & Irrigation Company, a corporation, hereinafter called defendant, on two causes of action. Defendant answered and cross-complained. The case was tried to a jury, which returned verdicts on both of plaintiff's causes of action in his favor and on the cross-complaint in favor of defendant, and judgment was rendered in accordance with the verdicts. After a motion for new trial was made by defendant and overruled, this appeal was taken by it.

The complaint sets up two causes of action, the first alleging that there was a written contract between the parties for the construction of a canal at an agreed price of 10½ cents per cubic yard, and that

in accordance with the terms thereof plaintiff excavated a certain amount of earth, for which work there was still due him, under the contract, the sum of $8,300.06. The second cause alleged that, at the completion of the work done under the contract, the parties entered into an oral contract for further work at the same price, and that plaintiff had done excavation thereunder, for which there was still due him the sum of $12,313.45.

The answer of the defendant, in substance, was that it had entered into a certain written contract with plaintiff for the construction of a canal, according to plans, specifications and surveys to be furnished by the defendant, and that in pursuance of such contract the plaintiff entered upon the work and continued therein until the fourth day of December, 1931, at which time he abandoned it without completing it as provided by the contract. It further alleges that the plaintiff in the doing of such work as he did finish had incurred various indebtednesses for materials and labor which had become liens against the property of defendant and which it would be obliged to pay, and that what work was done was not according to the specifications of the contract, either in manner or amount, and that no vouchers showing the work free from lienable claims had been furnished by plaintiff from time to time, as required by the contract, and that the work had never been completed or a certificate of completion issued by defendant's engineer, as also required by the contract. As a counterclaim it set up that the work was not done according to the plans, specifications and terms of the contract; that it failed by 800 feet of reaching the place where it was to be finished; that it was not completed within the time provided by the contract, or at all, and that to complete it according to the contract would cost $4,000; that the failure to complete in time had caused defendant to lose crops worth

some $10,000; and that it had been compelled to pay the sum of $644.50 in satisfaction of a judgment obtained by a lienholder against it. Under its counterclaim defendant prayed judgment for the sum of $14,644.54.

The plaintiff did not reply to any of the allegations of the answer regarding engineer's certificate of completion or failure to furnish vouchers, but denied the failure to perform in the time limit, or to finish the canal to the point required, or to build it according to the plans and specifications. He further alleged that, if the work was stopped it was because defendant had informed plaintiff's workmen that it would not pay any more money on account of the construction, and that, if they did any more work, they did so at their own risk; the effect being to make it impossible for plaintiff to construct the canal any farther. We think this sufficiently recites the pleadings upon which the case was tried.

The defendant has stated in its brief some thirty-one assignments of error, and has attempted to group these, as required by our rules, under propositions of law. We find it, however, somewhat difficult to determine from the grouping exactly what legal propositions defendant thinks are involved in the appeal, and shall therefore consider the case as best we may on the whole record.

The first issue is whether or not the work, which it is admitted was actually done, was performed under one written contract or under two contracts, one of which was written and the other of which was oral. The written contract admittedly executed by the parties is to the effect that plaintiff should construct certain drainage canals, "as shown by plans . . . as specifically described in the specifications and plans hereinafter referred to." It was further agreed therein that "the work hereby contracted for should be performed in accordance with the true intent and

meaning of the plans and specifications therefor which are hereby referred to and made a part of this contract.'' It was to be paid for at the rate of 10½ cents per cubic yard on monthly estimates of defendant's engineer, 50 per cent. immediately on such estimates and the balance after the work was completed and accepted by the engineer. The contractor was to furnish vouchers showing that all materials, labor and equipment had been paid for at the time each estimate was made, or the company would be entitled to withhold payment thereof, and the final payment was to be made when the engineer of defendant certified in writing that the work was finished according to the terms of the contract. Finally it was provided that, if the contractor failed or refused to continue the prosecution of the work diligently, the defendant had the right to take over and complete it and pay therefor from the 50 per cent. of the monthly estimate retained as provided by the contract.

There can be no doubt that any work done under the terms of the written contract had to be approved by the engineer on estimates made by him, and that no portion of the payments needed to be made until it appeared that there were, to the date of the estimate, no lienable claims for labor or material outstanding, and that the final payment should not be made until the engineer certified that the work was completed in accordance with the terms of the contract. Provisions of this nature are common in construction contracts and are held to be valid and binding (*Guarantee Title & Trust Co.* v. *Willis,* 38 Ariz. 33, 297 Pac. 445; *Elliott* v. *Missouri etc. R. Co.,* (C. C. A.) 74 Fed. 707; *Hathaway* v. *Stone,* 215 Mass. 212, 102 N. E. 461; *Williams* v. *Mount Hood R. Co.,* 57 Or. 251, 110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A 177), unless it appears that the engineer has acted arbitrarily and capriciously or unreasonably (*Guarantee*

*Title & Trust Co.* v. *Willis, supra; Ripley* v. *United States,* 223 U. S. 695, 750, 32 Sup. Ct. 352, 56 L. Ed. 614; *American-Hawaiian Engineering Co.* v. *Butler,* 165 Cal. 497, 133 Pac. 280, Ann. Cas. 1916C 44; *Hebert* v. *Dewey,* 191 Mass. 403, 77 N. E. 822; *Piper* v. *Murray,* 43 Mont. 230, 115 Pac. 669), or that the parties have waived such provisions (*Blethen* v. *Blake,* 44 Cal. 117; *Lavanway* v. *Cannon,* 37 Wash. 593, 79 Pac. 1117; *Ryan* v. *Curlew etc. Co.,* 36 Utah 382, 104 Pac. 218).

The contract itself does not specifically state of just what the work should consist, but identifies it by reference to the plans and specifications. The specifications do not describe the work, except by reference to the plans as follows: ''The plans consist of profiles marked Gillespie Drainage Canal and Arlington Drainage Canal, with typical cross sections of the same.'' The only plans which we find in the exhibits appearing in the abstract of record, or referred to therein, are one blue-print marked ''Gillespie Drainage Canal, typical cross section,'' and two drawings which are on their faces apparently the profiles of some kind of a canal. These last-mentioned drawings, however, do not have on them any of the identifying marks referred to in the written contract or the specifications, and it is impossible to determine to what canal they refer, except by extrinsic evidence. We therefore are of the opinion that, as a matter of law by its terms the written contract consisted only of the work shown in the blue-print which is marked and identified according to the specifications. This blue-print shows that the canal in question began at what is indicated thereon as Station 215 plus and terminated at Station 386 plus. There is nothing anywhere in either the contract, the specifications, or the only properly identified plan and profile appearing in the record to indicate, without the aid of parol evidence, that the

written contract covered more than the work between Stations 215 plus and 386 plus, as shown on the plan and profile referred to. There is a serious question as to whether parol evidence of any nature would be admissible to vary the terms of the written contract, which is unambiguous on its face, but, even assuming that such evidence would be admissible, the record shows a conflict therein, plaintiff testifying to one state of facts and defendant's witnesses to another. Under these circumstances, the verdict of a jury is final upon that point. We therefore hold that the work to be done under the written contract terminated at the said Station 386 plus.

The work done under this contract is that upon which plaintiff's first cause of action is based. Let us then consider whether there is any error in the record so far as the judgment on this particular cause of action is considered. It is urged by defendant that the record does not show (a) that the engineer had made his final estimate showing the value performed under the contract; (b) that vouchers showing that all material, labor and equipment used in the work which had been paid for were furnished to defendant; and (c) that a certificate of completion of the work was issued by defendant's engineer. The record shows that estimates for the work done from the beginning to and including the work for October, 1931, were made monthly by the engineer and approved for payment. Since, as we have held, the original contract terminated at Station 386 plus, and since the evidence shows that point was reached some time in June, these estimates covered work far beyond that station. We are of the opinion the reasonable conclusion to be drawn from this evidence is that the engineer was satisfied with the work done up to Station 386 plus and had approved all work thereto. It is the legal duty of an engineer to give a final certificate when he is satisfied that a con-

tractor is entitled thereto, and he is only justified in refusing to issue it when there is a real and substantial failure on the part of the builder to fulfill his duty under the contract. *Midgley* v. *Campbell Bldg. Co.*, 38 Utah 293, 112 Pac. 820; *Washington Bridge Co.* v. *Land etc. Co.*, 12 Wash. 272, 40 Pac. 982; 9 C. J. 766. We are of the opinion that on the whole record defendant's engineer did approve of in writing and accept the work done up to Station 386 at the time it was finished, and his failure to issue a formal final certificate does not bar plaintiff from recovering on his first cause of action.

It is true that no vouchers were furnished defendant showing that all work and material used up to Station 386 plus had been paid for. But when the suit was tried the time in which liens could be filed was long since past. If there were any such, defendant could have pleaded and proved them. Since it did not, we must assume there were none, as the provision in regard to vouchers was only to protect defendant against liens. If none existed or could come into being thereafter, we think a failure to furnish the vouchers would not defeat the first cause of action.

Much is made of the fact that, when the engineer reinspected the whole job in December, he discovered that the bottom of a large portion of the canal up to Station 386 plus was above grade. It also appears that this fact was due principally to a flood occurring in August, which partially filled the already excavated canal with silt. Of course if the written contract had been completed before that date and approved by the engineer, plaintiff cannot be held responsible for anything that happened after he had finished the job. We are of the opinion that the evidence was sufficient to justify the verdict in favor of plaintiff on his first cause of action.

We consider, then, the instructions given and refused on this cause of action. The only instruction which it is necessary to discuss, although we have considered them all, is that set forth in the fifteenth assignment of error, which reads as follows:

"In this case the plaintiff claims that he entered into a written contract on February 9, 1931, to construct for defendant approximately three and one-fourth (3¼) miles of drainage canal and to a point at station 386 as shown on plaintiff's Exhibit 'B' in evidence. The defendant claims that the written contract of February 9, 1931, required the plaintiff to construct approximately five (5) miles of drainage canal. If you find from the evidence that the contract of February 9, 1931, provided for the construction of only approximately three and one-fourth (3¼) miles of drainage ditch and to said station 386, then you shall find for the plaintiff upon his first cause of action. The amount you shall find in such case shall be at the rate of 10½¢ per cubic yard on the amount of cubic yards of earth removed by the plaintiff in pursuance of said contract to station 386, less any payments that the defendant may have made to plaintiff on account thereof and less any liquidated damages, if any, to which you find the defendant is entitled by virtue of the terms of said contract, and less any damages, if any, to which defendant may be entitled and which you find from the evidence for the noncompletion of said drainage canal to said station 386 in conformity with the contract plans and specifications and taking into consideration the time limited by said contract within which said work should be performed."

It is urged that this is a peremptory instruction to find in favor of plaintiff, conditioned only that the written contract provided the terminus of the canal at Station 386, and that it did not require that the contract should be completed. Even assuming that the instruction might have been more explicit had it expressly referred to the fact that the contract must be completed, other instructions given covered

that point fully, and we think the jury could not have been misled or defendant harmed by the omission to repeat that fact in the instruction complained of. We are therefore of the opinion that the first cause of action was properly submitted to the jury, and that their verdict and the judgment thereon were sustained by the record.

We consider next the second cause of action. As we have said, it is admitted that a great deal of work was done by plaintiff beyond Station 386, and we have held it was not done under the terms of the original written contract. What then was its legal status? Plaintiff testified, in substance, that F. A. Gillespie, the vice-president of defendant, at some time while work was being done under the original contract, stated to him in effect that, if defendant did not succeed in developing sufficient water when the canal reached Station 386, it would continue the work further. He had also been told substantially the same thing by Goodman, the engineer in charge, and, when they reached Station 386, Goodman told him to "go ahead," which he did, following profiles and surveys which were made from time to time, ahead of the new work. The estimates for this work after Station 386 were made by defendant's engineer in the same manner as they had been for the preceding work, for the months of June, July, August, September and October, and the customary 50 per cent. paid by defendant. We are of the opinion that the jury was justified in believing from this testimony that Goodman in effect contracted with plaintiff that he should continue work, under an oral contract which adopted all the terms of the original written contract, except that there was no specific limit as to where the work should stop; that being left to the discretion of defendant. Whether Goodman had authority from defendant to make such a contract is, we think, immaterial. Defendant was bound to know that as a

matter of law the original contract was completed at Station 386. The evidence is conclusive that it knew, all through the summer and fall, that plaintiff was continuing work beyond such place, and that monthly estimates were being made for his work at the rate of 10½ cents per cubic yard, and these estimates were paid by it without question. It is the law that a contract made even by a stranger, to say nothing of an agent without full authority, may be ratified by the principal, and we think the foregoing evidence is sufficient to estop defendant from contending it had not ratified the action of Goodman in contracting for a continuance of the work. Such being the case, plaintiff would be entitled to be paid for any work done under the new contract at the rate of 10½ cents per cubic yard, until he was notified by defendant to stop work. It is his contention that it in effect did so notify him by informing his workmen that it would pay no more money to him, and that, if they continued work, they did it at their own risk. We think that, even if this in terms was not a specific instruction for plaintiff to cease work, legally speaking it amounted to that. Plaintiff would then be entitled to recover for whatever yardage of earth he had removed in accordance with the provisions of the new contract.

The evidence shows that after Station 386 the canal ran through very swampy ground, so that it was impossible to retain its banks with a slope similar to that shown by the cross-section in the written contract, and that plaintiff removed some 30,000 yards of earth more than called for by such cross-section in order to maintain such banks. Was he entitled to compensation for this additional work? Ordinarily when a contractor takes a contract calling for the performance of a job, in accordance with a certain plan, if nothing is said in regard to what shall be done in case he finds the work necessary to

conform to the plan is for any reason more difficult or expensive than either party had anticipated, he must bear the cost in excess of the contract price. *Superintendent etc. of Public School of Trenton* v. *Bennett,* 27 N. J. L. (3 Dutch.) 513, 72 Am. Dec. 373. We think that principle applies to the present situation. It is not contended by plaintiff, but indeed is denied, that the work was "extra work" within the meaning of the contract. He claims it was part of the regular work required by the express terms of the contract. This is not true. Those terms required a certain cross-section of the canal, and if to maintain it to that capacity, at least, he must do more work than the contract and plans provide for, he must bear the cost. Although the engineer must have known of the increased amount of excavation, his estimates for months covered only the amount required by the contractual cross-section, and apparently plaintiff accepted partial payments on that basis without objection till the work finally terminated. The jury was not authorized under the law and the evidence to allow plaintiff anything for the 30,000 yards he claims he excavated in excess of that required by the contract.

It is urged that, since it was pleaded that plaintiff has assigned certain portions of his claim to other parties, judgment could not be rendered in his favor for the entire amount he claims, under any circumstances. We need not consider what might have been the effect of these alleged assignments, because the reporter's transcript shows that the pleading setting them up was withdrawn by defendant before trial.

The answer also pleads various alleged lienable claims outstanding for which defendant was obligated. What would have been the effect had these claims been proven properly we need not consider, for the record shows the only one of which there was evidence was a claim which had gone to judgment

in the sum of $644.50, and this was given to defendant in the third verdict of the jury.

It is contended that plaintiff in his letter of December 17, 1931, requesting payment, acknowledged that there were lienable claims which he had incurred then outstanding in the amount of some $11,000. Section 2021, Revised Code 1928, provides that, in order to fix and secure a lien, the claimants must record their claim of lien, if original contractors within ninety days, or otherwise within sixty days of the completion of the work. The trial of the case was commenced something over five months after the work had been finished. Claims which might have become liens at the date the letter in question was written by plaintiff would have lapsed long before the trial of the case, unless the statutory notice had been recorded. We think, if defendant intended to sustain its plea of lienable claims, it was upon it to show that such claims had been recorded within the statutory time.

The last question which we discuss is the effect of the failure of plaintiff to secure a certificate of completion of the work. As we have stated previously, this is a condition precedent to the bringing of suit on a contract of this nature, unless it appears that the certificate has been withheld arbitrarily, capriciously or unreasonably. We have held that, so far as the first cause of action is concerned, the making and approval of the estimate for the work up to and beyond Station 386 plus might reasonably be considered a certificate of completion of the original written contract. This, however, does not apply to the oral contract. Plaintiff, in response to the allegation of defendant that he had not obtained a certificate of completion of the work, did not allege any excuse for not obtaining it, nor did he show that the withholding of the certificate was arbitrary, capricious and unreasonable. The evidence is rather to

the effect that it was caused by a difference of opinion between plaintiff and defendant as to the completion of the contract. At least there is no evidence that the certificate was denied arbitrarily or capriciously. It is the contention of plaintiff in his brief that the parties had waived the provision of the oral contract requiring a certificate of completion. There is nothing in either the pleadings or the evidence to sustain this contention. As we have held, defendant had the right to stop the work at any time, and its conduct would justify the jury in finding it had done so, but this action on its part does not necessarily mean that it was satisfied with the character of the work done or the amount thereof, and, before plaintiff could recover, he must either produce a certificate of completion, as required by the contract, or show that it was capriciously or arbitrarily refused. The instructions of the trial court, taken as a whole, show the case was submitted to the jury in substance on the theory that the only question they were to consider on the second cause of action was whether the work was done in accordance with the terms of the contract. This is not the law. We have had the question of contracts of this nature under consideration in the case of *Guarantee Title etc. Co.* v. *Willis, supra.* Therein we hold that, while the legal interpretation of a contract is always for the courts, and the engineer may not change its terms, nevertheless his decision on questions of fact may only be challenged or set aside on the ground of fraud, arbitrary conduct or mistake amounting to bad faith. There is no allegation in the pleadings of any of these matters, nor was the case submitted to the jury on that theory. The proper procedure to follow and the reasons therefor are well set forth in the case of *Bush* v. *Jones*, (C. C. A.) 144 Fed. 942, 947, 6 L. R. A. (N. S.) 774, as follows:

" . . . Completion to the satisfaction and according to the trained professional judgment of the archi-

tect, who drew the plans and specifications, and is able to speak from a direct supervision over and inspection of the work as it progresses, and completion according to the opinion of the jury, under the imperfect conditions of a trial and the inability to produce things as they actually are, are two different and distinct propositions; and the owner, who has stipulated for the one, is not to be put off with the other, where everything is honestly and fairly done. Whether this is true, or whether the architect in withholding his approval acts capriciously or fraudulently, where there is evidence to sustain this charge, has necessarily to be submitted to the jury, and proof of a substantial compliance with the contract enters into this as an essential step. But to hold that, upon such proof, without more, the necessity for the production of a certificate is dispensed with, or is to be regarded as unreasonably withheld, and that, not as a fact, with others, for the consideration of the jury, but as a matter of law for the court, not only loses sight of the distinction which we have referred to, but makes the provision with regard to the architect's certificate useless and meaningless, for it puts a contract where it appears on a level with one where it does not; the contractor in the former being permitted to recover upon showing that he has substantially complied with it, and in the latter being required to prove no less. The jury in the present instance should therefore have been instructed that the production of a certificate was essential to a recovery, and that the want of it could not be dispensed with, unless it was established to their satisfaction that it had been unreasonably withheld. Bearing upon this, as already stated, was the evidence of a substantial completion of the work; but it should not have stopped there. Compliance with the contract was seriously questioned, and the material reduction made by the jury from the amount of the plaintiffs' claim shows that at least some things were lacking. Admittedly, there was a leaky and imperfectly waterproofed cellar, and whatever may be said of the guaranty that it should be watertight, there was in this an apparent defect, sufficient to justify

the architect in refusing to approve until it had been remedied. Had the jury, therefore, been instructed as to the necessity for his approval, and what was requisite to overcome the want of it, they might well have hesitated, under the circumstances, to hold as they were required, in order to find for the plaintiffs, that his refusal was arbitrary. In any view, the question was for them, and, not having been submitted to them nor passed upon by them, the verdict is without a proper finding to support it, and cannot be sustained.''

We have considered all the questions raised by the various assignments, but think it unnecessary to discuss them seriatim, as what we have already said determines all the legal issues needed to decide the case. The judgment upon the second cause of action for the foregoing reasons cannot stand. We think, however, that the two causes of action are so separable that it is not necessary that the first be retried. The judgments upon plaintiff's first cause of action and upon defendant's cross-complaint are affirmed, and the judgment upon plaintiff's second cause of action is reversed, and that cause of action remanded for a new trial, with leave to the parties to amend their pleadings as they may see fit before such new trial. Defendant will recover its costs in this court.

ROSS, C. J., and McALISTER, J., concur.