219 So.2d 569 (1969)
M. C. BAKER, Jr., d/b/a Abita Terrazzo Co.
v.
KELLER CONSTRUCTION CORPORATION.
No. 3370.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1969.
Denis A. Barry, II, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Frank C. Allen, Jr., New Orleans, for defendant-appellant.
Before REAGAN, SAMUEL, and BARNETTE, JJ.
REGAN, Judge.
The plaintiff, M. C. Baker, Jr., d/b/a Abita Terrazzo Company, the sub-contractor, filed this suit against the defendant contractor, Keller Construction Company, endeavoring to recover the sum of $750.00, which he asserts represents the balance due on account of the installation of terrazzo flooring in St. Frances Cabrini Catholic Church in the City of New Orleans.
*570 The defendant answered and denied that it was indebted to the plaintiff, and then explained that his work was accepted only after certain adjustments occurred, one of which required the withholding of $750.00 because the terrazzo work performed by him was not "artistically" acceptable.
Judgment was rendered in favor of the plaintiff as prayed for, and from that judgment, the defendant has prosecuted this appeal.
The record discloses that the plaintiff entered into a subcontract with Keller Construction Corporation on October 27, 1961, in which it agreed to furnish all material and perform all work necessary to complete the installation of terrazzo in St. Frances Cabrini Church for the sum of $23,125.00. There were four subsequent change order agreements for an additional $5,625.53.
It was stipulated by counsel that the work contracted for in the basic contract and in the addendas was completed in 1963, and was accepted by the owner on May 23, 1963.
Baker, the plaintiff, testified that there were some minor defects which were brought to his attention and were corrected by him, and that the first knowledge of the defects complained of occurred after the owner's acceptance; however, the defendant refused to pay the balance due of $2,200.00 which was subsequently reduced to $1,500.00 and finally reduced to $750.00. Baker stated that he had agreed to submit the dispute to arbitration; however, this offer was rejected by the owners.
Sidney Folse, the supervising architect and an associate of Curtis & Davis, testified that after pouring the terrazzo floor, it was determined by him that the work was not satisfactory from a technical and "artistic" point of view. The principal defect[1] complained of and the only one for which the $750.00 was withheld, was spottiness of the overall terrazzo installation. Folse stated that Baker became aware of this only after he had finished the terrazzo work since such a defect cannot be detected until after completion of the grinding process which occurs in degrees, that is, from the rough to the fine grinding and then the surface of the work is sealed. He explained that the defect was technically caused, that is, in the grinding process, agate was dislodged and filled in with a slurry not the color of the original agate, and therefore, the causation was technical with the ultimate effect being unlike the previously approved sample. The desired result was a dark background with a white agate; however, a brown color appeared in various spots throughout the church. He explained that the owners had decided against Baker's offer to arbitrate since their attorney advised them that the arbitor, the National Terrazzo and Mosaic Association, composed of terrazzo manufacturers and installers, might be prejudiced against them.
Folse related that he arrived at the figure of $1,500.00 as a credit rather than attempting to repair the defects because he feared that repairing the area might result in a less desirable artistic appearance and the floor was usable and serviceable in its present condition. The amount of $1,500.00 was calculated by relating the areas of discoloration to the total amount of terrazzo laid and applying that fraction against the basic contract cost for the terrazzo work. Incidentally, the floor plan from which Folse determined this fraction was not introduced into evidence because he stated that it had been lost. In any event, a meeting was arranged between Monseignor Frey, Pastor of St. Frances Cabrini Church, Keller Construction Company, and Curtis & Davis, the architects, at which time the sum ultimately agreed upon for reduction or retention was the sum of $750.00 as the result of Keller Construction Company's prevailing upon the owners *571 to accept the work on a fifty fifty basis since this was a matter involving "artistic" judgment. There is conflict in the testimony as to how much was originally withheld. Baker testified that $2,200.00 was withheld and George F. MacDiarmid, Vice-president and Secretary of Keller Construction Company, testified that $2,400.00 was withheld and that Folse reduced this amount to $1,500.00. Folse testified that he did not know about the amount of $2,400.00 being withheld, and that he had recommended the retention of only $1,500.00.
Folse admitted that any type of terrazzo work could be construed as artistic and that the terrazzo work of Baker was performed in a workmanlike manner but that it was not "artistically" acceptable, however, a letter by him to Keller Construction Corporation dated September 3, 1963, states that the dark spots complained of are acceptable commercially and noticeable only because of a dark background matrix. He also conceded that St. Frances Cabrini Church received an award for being one of the five most outstanding churches in the United States and that the terrazzo flooring was included in the award.
The defendant insists that Folse was justified in causing the amount of $750.00 to be deducted from the agreed price because of the provisions of Article 39 of the general contract, the significant part thereof reads:
"ART. 39 ARCHITECT'S DECISIONS
"* * * The Architect's decisions in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.
"Except as above or as otherwise expressly provided in the Contract Documents, all the Architect's decisions are subject to arbitration. * *"
There is no doubt that the sub-contractor is bound by the provisions of Article 39 by virtue of Article 13 of the sub-contract with Keller Construction Corporation which reads:
"Article 13. MISCELLANEOUS PROVISIONS: (a) The Sub-Contractor agrees to be bound to the Contractor to the same extent and under the same terms and conditions, in so far as they are applicable to his work, and except as they are modified by this agreement, as he, the Contractor, is bound to the Owner. (b) Notices sent to the Sub-Contractor by registered mail to his last known address shall constitute due notice for all purposes under this agreement."
The courts have recognized architects to be persons skilled in the art of building and at the head of the construction trade.[2] In construction contracts, parties frequently insert stipulations to the effect that the completion, sufficiency, classification or amount of work performed by the contractor shall be determined by the architect, which thus constitutes the architect an arbitrator, and where parties have agreed to be bound by the architect's decisions, the courts hesitate, in interpreting such contracts, to set aside the architect's ruling, unless it is manifestly arbitrary or shown to have been rendered in bad faith.[3] In order for an architect's decision to be considered as conclusive, plain language is required in the contract, and it is not implied.[4] On the other hand, the Louisiana Civil Code Article 2769 provides that if an undertaker fails to do *572 the work he has contacted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract. In order to justify the decree of quanti minoris predicated upon the rationale emanating from Article 2769, one must establish not only the existence of the damages complained of, but also the amount of the reduction to which he is entitled, that is, the expenditures necessary to correct the defects.[5]
To reiterate, Article 39 of the general contract states that the architect's decisions in matters relating to "artistic" effect are to be final, if within the terms of the contract documents. There is no provision contained therein relative to the manner in which damages are to be ascertained. The usual manner, that is determination of the amount required to correct the defects, was not used in this instance since the architect feared the corrective work would result in a less artistic or desirable appearance. He merely calculated the relation between the defective area and the total area and deducted fifty percent of that amount from the contract price for the terrazzo work, and by his own admission, the floor plan from which he determined this result has been lost. The only proof of damages was the architect's own self serving testimony that the work was not "artistically" acceptable. He also admitted, as we said, that the church had received an award for being the fifth most outstanding church in the United States and that this award encompassed the terrazzo work.
An analysis of both the law and the facts leads us to the inevitable conclusion that the decision of the architect was in fact arbitrary and the defendant's burden of proving damages in the amount of $750.00 has not been complied with, therefore, the judgment of the trial court is correct and will accordingly be affirmed.
The defendant is to pay all costs incurred herein.
Affirmed.
NOTES
[1] Folse testified that pitting at the communion rail is a different condition than that for which $750.00 was deducted.
[2] Fritz Jahncke, Inc. v. Fidelity & Deposit Co. of Maryland, 166 La. 593, 117 So. 729 (1928); Shea v. Sewerage and Water Board of New Orleans, 124 La. 299, 50 So. 166 (1909); C. G. Kershaw Contracting Company v. City of Crowley, 149 So. 181 (La.App. 1933); 110 A.L.R. 138, 139.
[3] Id.
[4] McCullough v. Clinch-Mitchell Construction Company, 71 F.2d 17 (8 Cir.) 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678 (1934); Guarantee Title and T. Company v. Willis, 38 Ariz. 33, 297 P. 445 (1931).
[5] Loeb v. Neilson, 128 So.2d 447 (La.App. 1961); Lillis v. Anderson, 21 So.2d 389 (La.App.1945); Reimann Construction Company v. Upton, 178 So. 528 (La.App. 1938); Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590 (1928).