467 P.2d 88

**NEW PUEBLO CONSTRUCTORS, INC., an Arizona corporation, Appellant,**

v.

**LAKE PATAGONIA RECREATION ASSOCIATION, INC., a nonprofit Arizona corporation, Appellee.**

**No. 2 CA–CIV 781.**

Court of Appeals of Arizona,
Division 2.

March 31, 1970.

Rehearing Denied May 4, 1970.

Review Denied June 2, 1970.

Robertson & Pickett, P. C., by Peter Johnson, Tucson, for appellant.

John S. Schaper, Phoenix, Karam & Martin, by Nasib Karam, Nogales, for appellee.

HOWARD, Chief Judge.

On September 25, 1967 the appellee, hereinafter referred to as Lake Patagonia or the Owner, and the appellant, hereinafter referred to as New Pueblo or the Contractor, entered into a contract for the construction of a dam on Sonoita Creek in Santa Cruz County, Arizona.

Paragraph 26 of the contract provides in part as follows:

> "ADJUSTMENT OF DISPUTE. All questions or controversies which may arise between the Contractor and the Owner, under or in reference to this contract, shall be subject to the decision of some competent person to be agreed upon by the Owner and the Contractor, and his decision shall be final and conclusive upon both parties. Should the Owner and Contractor be unable to agree upon such person, a board of three arbitrators shall be chosen, one by the Owner, one by the Contratcor, and the third by the two so chosen, and the decision of any two of said arbitrators shall be final and binding upon the parties. * * *"

In the fall of 1968, a dispute arose as to whether the dam had been completed by New Pueblo within the time specified by the contract, and whether Lake Patagonia was entitled to liquidated damages. In addition, New Pueblo contended that the project engineer had miscalculated certain quantities of material supplied by New Pueblo to the project and therefore miscalculated the amount of money due and owing to New Pueblo.

On January 29, 1969 the engineer certified that the work covered by the contract had been completed and accepted. The engineer certified what the total amount earned by the Contractor was and further certified that the sum of $81,972.52 was then due to the Contractor. New Pueblo filed a mechanics lien on January 10th and

17th, 1969 and claimed that over $124,800.-00 was due.

On April 18, 1969 New Pueblo, pursuant to paragraph 26 of the contract, sent a letter to Lake Patagonia requesting arbitration of the dispute as to the amount due.[1]

On April 21, 1969 Lake Patagonia filed a complaint in the superior court and two days later counsel for Lake Patagonia refused to concur with the request for arbitration.

On April 25, 1969 Lake Patagonia filed an application in the Santa Cruz County Superior Court for an order to stay arbitration. New Pueblo filed a response to the application to stay arbitration and affirmatively moved for an order to compel arbitration. New Pueblo also moved the court for an order staying the action filed in the superior court.[2]

Pursuant to A.R.S. § 12–1502 the court granted the stay of arbitration and refused to issue an order requiring arbitration.[3]

Appellant presents the following questions for review: Whether the trial court erred in denying New Pueblo's motion for an order compelling arbitration, erred further in denying New Pueblo's motion to stay the action pending arbitration, and further erred in granting Lake Patagonia's application to stay arbitration. The appellee, Lake Patagonia, contends that the above questions should be answered in the negative because 1) the superior court still retains jurisdiction over issues not related to the demand for arbitration and 2) the matter raised and the demand of New Pueblo is not subject to arbitration.

## NO ARBITRABLE MATTERS

It is Lake Patagonia's contention that the only matter as to which New Pueblo has sought arbitration by virtue of the letter of April 18, 1969 is the amount of money which New Pueblo claims to be due. It therefore reasons that any determination in this case as to the arbitrability of that is-

1. The first paragraph of that letter is as follows:

   "Pursuant to paragraph 26 of that certain contract and notice of award, dated September 25, 1967, between Lake Patagonia Recreation Association, Inc. and New Pueblo Constructors, Inc., notice is hereby given to Lake Patagonia Recreation Association to designate an arbitrator pursuant to paragraph 26 to participate in the decision of the following dispute: payment of the claim of New Pueblo Constructors, Inc. of the sum of $124,837.02 based upon proper measurement and computation of quantities and for completion of all items required by the project engineer, the designated agent of the owner, to be done by the contractor."

2. The action filed by Lake Patagonia consisted of four counts. Count one is a quiet title action based on the alleged invalidity of the mechanics liens filed by New Pueblo, count two is an action for slander of title based upon the filing of the mechanics liens, count three alleges breach of contract on the part of New Pueblo for failure to complete the contract on the date agreed upon, and count four asks the court to interpret paragraph 26 of the contract to resolve the question as to

whether or not their disputes must be arbitrated.

3. The pertinent provisions of A.R.S. § 12–1502 are as follows:

   "A. On application of a party showing an agreement described in § 12–1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issues so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

   B. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

   *   *   *   *   *

   E. An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown."

sue has nothing to do with its quiet title action, the right of Lake Patagonia to sue for damages for malicious filing of the liens and its right to liquidated damages resulting from New Pueblo's failure to complete the work covered by the contract. It contends that since none of these issues are within the demand for arbitration, then resolution of the said issues are completely beyond the authority of any arbitrator. Lake Patagonia cites no authority for this contention, and we have found none.

Referring to the theory of arbitration generally, our Supreme Court has stated:

"Broadly speaking, arbitration is a contractual proceeding, whereby the parties to any controversy or dispute, in order to obtain an inexpensive and speedy final disposition of the matter involved, select judges of their own choice and by consent submit their controversy to such judges for determination, in the place of the tribunals provided by the ordinary processes of law." Gates v. Arizona Brewing Co., 54 Ariz. 266, 95 P.2d 49 (1939).

■ Therefore, in order to accomplish this purpose, arbitration clauses should be construed liberally and any doubts as to whether or not the matter in question is subject to arbitration should be resolved in favor of arbitration. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2nd Cir. 1961); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2nd Cir. 1959); Lundell v. Massey-Ferguson Services N. V., 277 F. Supp. 940 (N.D. Iowa 1967); Southern Bell Telephone & Telegraph Co. v. Louisi-

ana Power and Light Co., 221 F.Supp. 364 (D.La.1963); Firestone Tire & Rubber Co. v. United Rubber Workers of America, Local Union No. 100, AFL–CIO, 168 Cal. App.2d 444, 335 P.2d 990 (1959); Bewick v. Mecham, 26 Cal.2d 92, 156 P.2d 757 (1945).

The federal courts have adopted what could be termed the "positive assurance" test which requires arbitration unless it can be said with "positive assurance" that the arbitration clause does not cover the dispute:

\*    \*    \*    \*    \*    \*

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior and Gulf Navigation Co., supra.[4]

■ Turning our attention to the contract in the instant case, we find that the parties agreed that:

"*All* questions or controversies which may arise between the Contractor and Owner, *under or in reference to this contract*, shall be subject to the decision of some competent person to be agreed upon by the Owner and the Contractor. \* \* \*" (Emphasis added.)

We think it can be clearly said that all the matters raised in Lake Patagonia's complaint are matters which have their basis in the contract. Lake Patagonia's contention that the trial court still has jurisdiction because the matters set forth in its complaint were not covered in the demand letter of April 18, 1969 is entirely without merit. The only matter that can fairly

4. See also Operating Engineers Local Union No. 3 v. Crooks Bros. Tractor Co., 295 F.2d 282 (9th Cir. 1961); Amalgamated Meat Cutters and Butcher Workmen of North America, No. 385, AFL-CIO v. Penobscot Poultry Co., 200 F.Supp. 879 (D.Me.1961); International Union, United Automobile, Aircraft, and Agricultural Implement Workers of America,

AFL-CIO v. Cardwell Manufacturing Co., 304 F.2d 801 (10th Cir. 1962); Carey v. General Electric Co., 315 F.2d 499 (2nd Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964); American Radiator & Standard Sanitary Corp. v. Local 7 of International Brotherhood of Operative Potters, AFL-CIO, 358 F.2d 455 (6th Cir. 1966).

be said not to be within the letter is Lake Patagonia's claim for liquidated damages as the result of New Pueblo's alleged failure to complete the work on time. New Pueblo's motion in the court to require arbitration of the matters set forth in Lake Patagonia's complaint is sufficient demand for arbitration of the matter of the right to liquidated damages.

## ARE DECISIONS OF THE ENGINEER ARBITRABLE?

Lake Patagonia next contends that the matters set forth in its complaint in the trial court are not subject to arbitration because of the fact that the contract excludes from arbitration the decisions of the engineer. This contention is based upon paragraphs 14 and 20 of the contract between the parties.[5]

Lake Patagonia takes the position that these paragraphs make the engineer the sole judge of the amount due and payable under the contract, that his judgment is therefore final and conclusive and not subject to the arbitration clause. The type of provisions as provided in paragraphs 14 and 20 of the contract at issue have been held as making the engineer the sole and final judge of the quality, quantity and acceptability of the Contractor's work. Guarantee Title & Trust Co. v. Willis, 38 Ariz. 33, 297 P. 445 (1931); Gillespie Land

& Irrigation Co. v. Hamilton, 43 Ariz. 102, 29 P.2d 158 (1934); Massman Const. Co. v. Lake Lotawana Ass'n, 240 Mo.App. 469, 210 S.W.2d 398 (1948).

If it were not for other provisions in the contract, we would have to agree with Lake Patagonia that the questions involved have been excluded from arbitration. However, the contract must be construed so that every part of it is given effect. Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123 (1950). The courts will adopt such construction as will harmonize all parts of the contract and conflicting provisions will be reconciled by a reasonable interpretation in view of the entire instrument. Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003 (1953). Turning to paragraph II, B, 2, page 3 of the special conditions of the contract, we find that they provide in part as follows:

"The Owner's representative and the Contractor's representative shall be present during the classification of material excavation. Upon written request of the Contractor a statement of quantities and classification of excavation in designated locations will be furnished the Contractor within 10 days of the receipt of such request. This statement shall be considered as satisfactory to the Contractor unless specific objections thereto, with reasons therefor, are filed with the

---

5. Paragraph 14 provides in part:

"* * * The Engineer shall have full authority to interpret the Plans and Specifications and shall determine the amount, quality, and acceptance of the work and supplies to be paid for under this contract and every question relative to the fullfillment of the terms and provisions therein. * * *"

Paragraph 20 provides as follows:

"Partial payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable on estimates made by the Engineer and as approved by the Owner, provided that the Contractor is performing the overall job in a diligent manner. In making partial payments, there shall be retained ten percent on the amount of each estimate until final completion

and acceptance of all work covered by the contract.

Upon the completion and acceptance of the work, the Engineer shall issue a certificate that the work has been completed and accepted by him under the conditions of this contract, and shall make and approve the final estimate of the work. The entire balance found to be due the Contractor, including the retained percentages, but excepting such sums as may be lawfully retained by the Owner, shall be paid to the Contractor. Such payment shall be conditioned, however, upon the submission by the Contractor of evidence satisfactory to the Owner that all claims for labor, material, and any other outstanding indebtedness in connection with this Contract have been paid."

* * * * *

Owner, in writing, within 10 days after receipt of said statement by the Contractor or his representative on the work. Failure to file such written objections within said 10 days shall be considered a waiver of all claims based on alleged erroneous estimates of quantities or incorrect classification of materials for the work covered by such statement."

■ This paragraph indicates to us that it was never intended that the decision of the engineer would be final and conclusive on the matters that are at issue. Why give the contractor a right to a claim based on alleged erroneous estimates of quantities or incorrect classification of materials if the decision of the engineer was to be final? Furthermore, the contract provides that it is the duty of the engineer to enforce the specifications in a fair and unbiased manner and that computation of quantities of material that are used shall be made by the engineer in accordance with the methods defined in the plans and specifications. If the engineer fails to perform his duty in a fair and unbiased manner or fails to compute the quantities in the method defined in the plans and specifications, is his decision still to be final and conclusive? We think not. Even the cases cited by Lake Patagonia for the proposition that the engineer's decision is final and conclusive except acts on the part of the engineer that are arbitrary, capricious or unreasonable. New Pueblo did file an objection pursuant to the provisions of paragraph II, B, 2 of the special conditions of the contract and such objection was rejected. The whole tone and tenor of the claim of New Pueblo is that the action of the engineer was arbitrary, capricious and unreasonable.

Furthermore, we believe that the arbitration clause in and of itself nullifies any finality which the engineer may be cloaked with by virtue of paragraphs 14 and 20 of the agreement. This does not apply to those matters upon which the parties made the decision of the engineer conclusive as is found in paragraph 9:

"* * * The Contractor shall not take advantage of any errors, discrepancies or omissions which may exist in the Plans and Specifications, but shall immediately call them to the attention of the Engineer whose interpretation or correction thereof *shall be conclusive*." (Emphasis added.)

In the final analysis, if we were to follow the contentions of Lake Patagonia as to the finality of the engineer's decisions, we would have to write the agreement to arbitrate completely out of the contract since there would be nothing left to arbitrate. This we decline to do.

■ Lake Patagonia also contends in essence that the matters which would be decided by the arbitrators would involve both questions of law and fact and that questions of law are to be decided by the courts and not by arbitrators. This argument is also without merit. An arbitration agreement such as the one in this case gives the arbitrators full power to decide both questions of law and fact. Funk v. Funk, 6 Ariz.App. 527, 434 P.2d 529 (1967).

## FARMERS HOME ADMINISTRATION APPROVAL

■■ Paragraph 41 of the contract between the parties provides in part:

"* * * The final estimate of the work must be checked and approved by both the Engineer and the Representative for Farmers Home Administration. * * *"

Lake Patagonia contends that such a requirement for approval by a third person is a condition precedent to recovery under the contract and that there is no way in which an arbitrator could independently determine what was due to New Pueblo and enter a binding arbitration award unless the arbitration award were approved by Farmers Home Administration. They therefore reason that an arbitration proceeding would be meaningless. We do not agree with the contention of Lake Patagonia. Clauses in building construction contracts which require approval by federal administrative agencies do not make such

agencies the final judge as to whether or not either party has performed under the contract. See 67 A.L.R.2d 1017 et seq.

## OTHER MATTERS

■ Lake Patagonia contends that the $14,173.24 claimed by New Pueblo to be due is for extra work which was not approved by the engineer. Because of this Lake Patagonia claims that such extra work does not arise "under or in reference to" the contract. We do not agree. We believe that it does arise under or in reference to the contract. Paragraphs 10 and 11 of the contract relate to extra work and charges and claims for extra costs. The fact that the engineer would not issue any contract change orders and would not approve of the claim does not preclude New Pueblo from asserting its claim for the requirement of a change order as a condition precedent to recovery will be eliminated in the presence of gross mistake, fraud or error amounting to a failure to exercise an honest judgment. Corbin on Contracts § 651 (1952), Restatement of Contracts § 303. This issue really involves the merits of the action which are not the concern of the courts. A.R.S. § 12–1502, subsec. E.

■ In its last dying volley Lake Patagonia claims that in any event none of these issues are arbitrable because the arbitration clause only refers to controversies between the Contractor and the Owner and this controversy is between the engineer and the Contractor. This contention is spurious. The agreement between the parties makes the engineer the agent of the Owner.

For the foregoing reasons the order of the trial court is set aside and the case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

KRUCKER, J., and LAWRENCE GAL-LIGAN, Superior Court Judge, concur.

NOTE: Judge HATHAWAY having requested that he be relieved from con-

sideration of this matter, Judge GALLI-GAN was called to sit in his stead and participate in the determination of this decision.